JOSEPH DEVLIN, JR., Employee, Plaintiff v. APPLE GOLD, INC., Employer and ZENITH INSURANCE CO., Carrier, Defendants

No. COA01-1389

(Filed 15 October 2002)

**Workers' Compensation— wage-earning capacity—continuing disability—earnings from self-employment**

The Industrial Commission erred in a workers' compensation case by finding that plaintiff employee had regained his wage-earning capacity and by concluding that plaintiff failed to meet his burden of showing continuing disability under N.C.G.S. § 97-2(9) based on plaintiff's earnings from self-employment, because the Commission's findings are insufficient to determine plaintiff's actual wage-earning capacity.

Appeal by plaintiff from opinion and award entered 13 June 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 September 2002.

*The Law Office of Leslie O. Wickham, Jr., by Mark H. Woltz, for plaintiff-appellant.*

*Morris York Williams Surles & Barringer, LLP, by Kim E. Taylor, for defendant-appellees.*

DEVLIN v. APPLE GOLD, INC.

[153 N.C. App. 442 (2002)]

THOMAS, Judge.

Plaintiff, Joseph Devlin, Jr., appeals from an Opinion and Award of the North Carolina Industrial Commission. The Commission found he had regained wage-earning capacity and concluded he had failed to meet his burden of showing continuing disability.

Plaintiff, however, contends his attempt at self-employment is not sufficient to show either that his wage-earning capacity is at pre-injury levels or that he has marketable skills. We reverse and remand.

On 18 June 1995, Devlin slipped and injured his left knee while in the course and scope of his employment with defendant Apple Gold, Inc. A claims representative for defendant Zenith Insurance Co., Apple Gold's carrier, executed a Form 63 on 13 September 1995, advising Devlin that payment of workers' compensation benefits would be made without prejudice to defendants' right to later contest the claim or their liability. Defendants did not contest either the claim or their liability within the statutory period set forth in N.C. Gen. Stat. § 97-18(d). Therefore, plaintiff's entitlement to compensation became an award of the Commission pursuant to N.C. Gen. Stat. § 97-82(b). *See Shah v. Howard Johnson*, 140 N.C. App. 58, 63-64, 535 S.E.2d 577, 581 (2000), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 17 (2001); *Higgins v. Michael Powell Builders*, 132 N.C. App. 720, 723-24, 515 S.E.2d 17, 20 (1999). Pursuant to the executed Form 63, plaintiff received temporary total disability benefits in the amount of $370.35 per week from 12 September 1995 through 26 August 1997.

Defendants eventually filed a Form 24 application seeking to terminate payment of compensation. It was approved by the Special Deputy Commissioner and filed on 26 August 1997. Plaintiff's temporary total disability benefits were retroactively terminated beginning 16 January 1997, which the Special Deputy Commissioner concluded to be the date plaintiff's self-employment business receipts demonstrated some wage-earning capacity.

Plaintiff requested a hearing to contest the Commission's approval of defendants' Form 24. He also filed a claim for additional medical compensation pursuant to N.C. Gen. Stat. § 97-25.1.

On 17 May 1999, the matter was heard by Deputy Commissioner Wanda Blanche Taylor. She found as fact that plaintiff started a gutter and roofing business with a neighbor in November 1996 and continued to help operate it. She also found that plaintiff's trial return to

work was successful and plaintiff had failed to produce evidence of his continued diminished earning capacity. She concluded:

3. Plaintiff has not shown that he is disabled in that [he] has not shown that he does not have the capacity to earn the wages which he was earning at the time of his compensable injury; nor, has the plaintiff established a diminution in that ability.

She further determined plaintiff to be "entitled to compensation at the rate of $370.34 per week for a period of 50 weeks for his [25%] permanent partial disability of the left leg." She allowed defendants an offset for the temporary total disability benefits paid from 16 January 1997 through 25 August 1997. Finally, she concluded that defendants are liable for all medical expenses incurred by plaintiff as a result of his compensable injury, including any future medical expenses. The parties appealed.

On 13 June 2001, the full Commission affirmed the opinion and award of the deputy commissioner with Commissioner Bernadine S. Ballance filing a dissenting opinion. The full Commission's findings of fact included, *inter alia*, the following: At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-year-old male with a GED. Prior to his injury, he had worked primarily in restaurants, with brief periods of employment with IBM and driving a delivery truck. Plaintiff began working as a cook at Applebee's, a restaurant owned by defendant Apple Gold, in August 1993. Prior to his injury in June 1995, he had progressed from cook to shift supervisor to assistant general manager. On 14 November 1996, plaintiff reached maximum medical improvement and was discharged from medical treatment. He retained a twenty-five percent (25%) permanent partial disability rating to his left leg. When released from medical care, plaintiff was restricted from activities requiring climbing, working on unlevel surfaces, and scaffolding. He was advised to avoid prolonged squatting and kneeling and was told he would not be able to perform those functions on a repetitive basis.

The full Commission made the following further findings of fact:

11. In November 1996, plaintiff started a gutter business, D & D Gutter and Roofing, with a neighbor. This business manufactured and installed gutters and performed some roofing. Plaintiff's wife is listed as the owner and president of the business; however, she is also employed full-time as a manager of an apartment complex. Plaintiff is the vice president of the business and responsible for

DEVLIN v. APPLE GOLD, INC.

[153 N.C. App. 442 (2002)]

talking with contractors, writing invoices, ordering materials, generating business, performing technical consultations, inspecting jobs, and making job quotes. Plaintiff's wife keeps the financial records and calculates the taxes. The company has had as many as eight employees, but generally has three or four. Plaintiff has never physically worked on the roofs or carried bundles of shingles around the job site.

12. Plaintiff submitted business records from D & D Gutter and Roofing. However, these records did not include a complete list of checks drawn on the checking account from that business. Checks were sometimes written for personal rather than business expenses, and the personal items were not included in the submitted records. There was also evidence that plaintiff and his wife had occasionally loaned money to the business. Gross sales for 1996 (November and December) were $13,000.00 During that time, plaintiff continued to draw temporary total disability benefits at the rate of $370.35 per week. In 1997, the gross receipts were $54,841.00 and in 1998, the gross receipts of the company were $61,725.00. Income tax returns noted that 1998 was the first year of profit. However, deductions including depreciation, bad debt and the like, affect the profitability of the company.

13. D & D Gutter and Roofing deducts expenses for advertising, vehicles, gas, mileage, tools and equipment, materials, supplies, salaries, and consulting fees. Plaintiff's family also allocates twenty-five percent of the family's electric bill to the business as an expense. Tax records, which showed profits and losses of the company, do not accurately reflect the worth of the company and do not indicate plaintiff's actual wage earning capacity.

. . .

19. From November 1996 and continuing, plaintiff has developed and operates a gutter and roofing business. Plaintiff has dealt with advertisers, workers, suppliers, and potential customers. Although plaintiff's business has not generated a "profit," it has generated substantial revenues due in large part to his efforts and skills. It is likely that plaintiff is compensated for his substantial contribution to the business.

20. Plaintiff is capable of earning wages as a business manager as he has the skills to develop and operate his own business, and he

held a responsible managerial position in his employment with defendant-employer.

21. Plaintiff's return to work in his own business in November 1996 was a trial return to work, because he was under work restrictions. Plaintiff's return to work was successful, and he has not produced persuasive evidence of the extent of any continuing diminished earning capacity.

. . . .

The Commission concluded that plaintiff had failed to meet his burden of showing continuing disability under N.C. Gen. Stat. § 97-2(9). The Commission further concluded plaintiff retained a twenty-five percent (25%) permanent partial disability to the left leg and ordered defendants to pay plaintiff $370.34 per week for fifty weeks. Defendants were allowed an offset from that amount due to its payment of temporary total disability benefits from 16 January 1997 through 25 August 1997.

Commissioner Ballance dissented from the majority opinion, stating there was insufficient evidence of (1) plaintiff having adequate skills as a manager to obtain work in the general marketplace, or (2) plaintiff being capable of earning wages equal to or greater than his pre-injury wages.

In reviewing an opinion and award of the Industrial Commission, this Court is bound by the Commission's findings of fact when supported by any competent evidence, but the Commission's legal conclusions are fully reviewable. *See Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000). This Court does not weigh the evidence and decide the issue on the basis of its weight; rather, this Court's duty goes no further than to determine whether the record contains any evidence tending to support the finding. *See Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). If the findings of the Commission are insufficient to determine the rights of the parties, this Court may remand to the Industrial Commission for additional findings. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982).

The Workers' Compensation Act defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2001). "Compensation must be based upon loss of wage-earning power rather than the amount actually

received." *Hill v. DuBose*, 234 N.C. 446, 447-48, 67 S.E.2d 371, 372 (1951). If wage-earning power is only diminished, the employee is entitled to benefits under N.C. Gen. Stat. § 97-30. *Gupton v. Builders Transport*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987). If wage-earning power is totally obliterated, the employee may recover under N.C. Gen. Stat. § 97-29. *Id.* "The focus of this determination is not on 'whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff [him]self has such capacity.' " *Lanning*, 352 N.C. at 105, 530 S.E.2d at 59-60 (quoting *Little v. Anson County Sch. Food Serv.*, 295 N.C. 527, 531, 246 S.E.2d 743, 746 (1978)). The earning capacity of an injured employee must be evaluated "by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805-06 (1986). The employee's age, education, and work experience are factors to be considered in determining the person's capacity to earn wages. *Little v. Anson County Sch. Food Serv.*, 295 N.C. 527, 532, 246 S.E.2d 743, 746 (1978).

In *Lanning*, the Supreme Court addressed when an injured employee's earnings from self-employment can support a finding of wage-earning capacity. The Court stated:

While an employee's management skills may be significant in the operation of certain businesses . . . different skills may be relevant to and necessary for the operation of other types of personal businesses. The determinative issue is whether the skills— be they management, computer, accounting, sales, consulting, or something else—utilized by the employee in the active operation of his own business, when considered in conjunction with the employee's impairment, age, education, and experience, would enable the employee to compete in the labor market. *See Peoples*, 316 N.C. at 438, 342 S.E.2d at 806. We hold, therefore, that the test for determining whether the self-employed injured employee has wage-earning capacity is that the employee (i) be actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place not withstanding the employee's physical limitations, age, education and experience.

*Lanning*, 352 N.C. at 107, 530 S.E.2d at 60-61; *see also McGee v. Estes Express Lines*, 125 N.C. App. 298, 480 S.E.2d 416 (1997).

DEVLIN v. APPLE GOLD, INC.

[153 N.C. App. 442 (2002)]

The determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence. *Hilliard*, 305 N.C. at 594-95, 290 S.E.2d at 683. However, "[w]hether plaintiff's management skills are marketable and whether plaintiff is actively involved in the business' personal management are questions of fact" to be determined by the Commission. *Lanning*, 352 N.C. at 108, 530 S.E.2d at 61.

Here, the Commission found as fact that plaintiff was vice president of the gutter and roofing business and "responsible for talking with contractors, writing invoices, ordering materials, generating business, performing technical consultations, inspecting jobs, and making job quotes." This is akin to a finding that plaintiff was actively involved in the day to day operation of the business. However, the Commission made no finding that plaintiff's management skills are competitively marketable in light of his physical limitations, age, education and experience. Further, the Commission made no determination of whether plaintiff's wage-earning capacity was equal to or greater than his pre-injury wage-earning capacity. The Commission simply found that plaintiff's business had generated substantial revenues due in large part to his efforts and skills, that plaintiff was likely being compensated, and that he "had some wage-earning capacity." The Commission's findings are insufficient to determine plaintiff's actual wage-earning capacity.

Since the Commission failed to make findings necessary to determine plaintiff's actual wage-earning capacity and the rights of the parties, we reverse the Commission's opinion and award. We remand to the Commission for findings consistent with the legal principles stated in this opinion. *See Lanning*, 352 N.C. at 109, 530 S.E.2d at 61.

Reversed and remanded.

Chief Judge EAGLES and Judge MARTIN concur.