ROY RONALD HENSLEY, EMPLOYEE, PLAINTIFF v. INDUSTRIAL MAINTENANCE OVERFLOW, EMPLOYER, AND PMA INSURANCE GROUP, CARRIER, DEFENDANTS

No. COA03-1140

(Filed 21 September 2004)

**1. Workers' Compensation— total disability—outside income—skills not transferable**

The Industrial Commission did not err by concluding that a workers' compensation plaintiff was totally rather than partially disabled, even though he earned income from a tobacco allotment and a mobile home park. There was evidence to support findings that plaintiff was not actively involved in operating the tobacco allotment and that the skills he used to set up and run the mobile home park were not transferable. Findings supported by competent evidence must stand even if there is evidence to the contrary.

**2. Workers' Compensation— findings showing that evidence considered—sufficiency**

The Industrial Commission did not err in a workers' compensation case by not giving a reason for disregarding the opinion of

plaintiff's treating physician and not making detailed findings about defendant's surveillance videotape. The Commission made findings about the doctor and the tape which showed that it considered all of the evidence; nothing more was required.

Appeal by defendants from Opinion and Award entered 5 May 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 April 2004.

*David Gantt, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Neil P. Andrews and Nadia Z. Schroth, for defendants-appellants.*

GEER, Judge.

In this appeal from an Opinion and Award of the North Carolina Industrial Commission, defendants Industrial Maintenance Overflow ("Industrial") and Industrial's insurance carrier, the PMA Insurance Group, challenge the Commission's conclusion that plaintiff Roy Ronald Hensley is totally disabled. Defendants contend Mr. Hensley's income from a tobacco allotment and ownership of a mobile home park established that he is only partially disabled. Because the Commission made the findings of fact required by *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 107-08, 530 S.E.2d 54, 61 (2000) and because those findings are supported by competent evidence, we affirm the Commission's Opinion and Award.

Facts

At the time of the hearing, Mr. Hensley was 59 years old and had a twelfth-grade education. He worked for Industrial as an ironworker for 20 years, setting up cranes and rigging for the installation of telephone towers and equipment. On 30 October 1998, Mr. Hensley was injured at work when a 20-ton dolly "broke loose," struck him in the left knee, and smashed him against a wall, hurting both knees. Mr. Hensley went to St. Joseph's Urgent Care the next day and was immediately referred to Blue Ridge Bone and Joint Clinic, an orthopedic practice, for further evaluation.

Mr. Hensley was diagnosed with an ACL tear to his left knee, and on 8 December 1998 underwent surgery to repair the knee. Defendants accepted the claim pursuant to a Form 60 and paid medical expenses and compensation benefits. After returning to work for four weeks, Mr. Hensley sought medical treatment for pain

**HENSLEY v. INDUSTRIAL MAINT. OVERFLOW**

[166 N.C. App. 413 (2004)]

in his right knee. A 3 March 1999 MRI revealed a torn medial meniscus in Mr. Hensley's right knee, and Dr. David Cappiello performed surgery on 17 March 1999 to repair it.

In April 1999, Mr. Hensley returned to light duty work with Industrial. Industrial did not require him to perform any climbing or other duties that exceeded his existing restrictions, and plaintiff was usually able to handle his responsibilities in this light duty position. The Commission found that the position was an accommodation not available to the general public. Defendants dispute this finding.

On 10 November 1999, Mr. Hensley resigned from his light-duty job after he was accused of stealing time by improperly filling out time cards. Beginning on 22 November 1999, Mr. Hensley worked part-time for Rogers and Son Welding for several weeks. Jerry Rogers, who had previously worked with Mr. Hensley, testified that Mr. Hensley could barely climb around the trucks and onto ladders and had considerable problems walking and working on concrete. Mr. Rogers noticed Mr. Hensley limping when he walked.

Mr. Hensley's right knee continued to bother him during his employment with Rogers. On 18 January 2000, Dr. Cappiello performed a total knee replacement of Mr. Hensley's right knee. On 18 December 2000, Dr. Cappiello reported that "patient appears to be doing better since his last visit" and stated, "I would like him to progress his activities as tolerated[.]" In handwriting at the bottom of the note appeared:

Dr. Cappiello

Please addendum this note to say[:]

Pt. was released to return to full duty in his July visit. He has resigned from his prev job but has been running his mobile home park. Pt can continue to work.

Otherwise they <u>say</u> they have to continue his w/c pay till he is <u>fully</u> released.

(Emphasis original) This request was apparently prompted, as the Commission found, by an inquiry from the medical case manager in this matter. In a 23 January 2001 addendum, Dr. Cappiello wrote: "The patient was released to resume full duty at work in July, 2000. I have been informed that he has resigned from his previous job, but is now running a mobile home park. Therefore, he is working in some capacity at this time. He is now discharged from treatment with 30

percent permanent partial disability of his right lower extremity[.]" Dr. Cappiello also imposed a permanent restriction of no climbing.

Dr. William L. Griffin, an orthopedic specialist, provided a second opinion. Dr. Griffin assigned Mr. Hensley a 30% permanent partial disability to his lower right extremity and a 40% permanent partial disability to his left knee. Dr. Griffin indicated that Mr. Hensley is limited to sedentary work with no lifting over 30 pounds; no repetitive lifting; no stooping, squatting, kneeling or climbing; and no standing or walking for prolonged periods. Dr. Griffin stated that he believes Mr. Hensley will require replacement of his left knee within five years and that both Mr. Hensley's right and left knee problems resulted from his compensable injury.

Several witnesses, who had known Mr. Hensley for many years, testified about substantial changes in Mr. Hensley's physical capabilities following his injury, including his limited ability to walk. Terry Sprouse, a contractor who had known Mr. Hensley for 25 years and observed him on job sites both before and after his injury, testified that he would not be willing to employ Mr. Hensley in his present condition because he would likely injure himself further or cause accidents to other workers.

The Commission found, based on this evidence and Mr. Hensley's testimony, that Mr. Hensley cannot stand or walk for any sustained period of time and that he cannot climb or sleep for more than a few hours at a time because of his continuous knee pain. In addition, it found that Mr. Hensley has poor balance and that he remains off his feet and resting more than half of the day.

Since leaving work with Industrial, Mr. Hensley's income has been limited to his wages from Rogers and Son Welding, income from his mobile home park, and income from his tobacco allotment. Mr. Hensley began developing a mobile home park in 1992 as a means of securing retirement income. The first mobile home was placed in the park in June 1999, approximately eight months after Mr. Hensley's injury. Mr. Hensley's activities in running the park have primarily consisted of collecting rent; he has had others perform most of the physical labor involved in the park's development and maintenance. Mr. Hensley's income tax returns show he received $5,572.00 in gross rental income in 1999 and $25,289.00 in gross rental income in 2000. Mr. Hensley, who also owns a tobacco allotment, had previously raised tobacco himself, but after his injury, he leased the allotment to others.

Mr. Hensley participated in job search activities with defendants' vocational counselor. He worked with Manpower and pursued all other leads provided by the counselor without success in finding full or part-time employment. Mr. Hensley also completed 15 to 20 job applications on his own without obtaining work. Although N.C. Vocational Rehabilitation was consulted, the only job possibility that it suggested was piecework at a sheltered workshop, earning $15.00 per day.

On 11 March 2002, Randy Adams, M.Ed., a Certified Vocational Evaluator, evaluated Mr. Hensley and reported:

If Mr. Hensley's complaints of pain are considered, it is my vocational opinion that he would not be able to perform any substantial gainful activity as it may be found in the local, state or national economy. He would be considered totally disabled from work.

Mr. Adams further testified that Mr. Hensley did not have any skills from the management of his mobile home park that would be transferrable to other types of work and that he was "relegated to sedentary type work." Mr. Adams further testified that Mr. Hensley's verbal and math skills, as well as his digital dexterity (in the bottom 10th percentile), rendered him unable to perform most types of sedentary work.

On 5 March 2001, plaintiff filed a Form 90, reporting that he had received earnings from work during the period between 30 October 1998 and 31 December 2000. Defendants filed a Form 24 seeking to terminate Mr. Hensley's ongoing wage compensation and seeking a credit for overpayment of wage compensation. On 4 September 2001, following a Form 24 telephonic informal hearing, Special Deputy Commissioner Myra L. Griffin filed an order disapproving defendant's application. Defendants requested a hearing.

On 18 September 2002, Deputy Commissioner W. Bain Jones, Jr. filed an Opinion and Award, concluding that Mr. Hensley was totally disabled as a result of a compensable injury to both of his knees on 30 October 1998, that defendants had not met their burden as to termination of plaintiff's benefits, and that plaintiff was entitled to total disability benefits until further order of the Commission. Defendants appealed to the Full Commission, but on 5 May 2003 the Full Commission affirmed, with modifications, Deputy Commissioner Jones' Opinion and Award. Defendants filed

a timely notice of appeal to this Court from the Full Commission's Opinion and Award.

## Standard of Review

In reviewing an Opinion and Award from the Industrial Commission, this Court is bound by the Commission's findings of fact when they are supported by any competent evidence, but legal conclusions are fully reviewable. *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000). Determinations of the weight and credibility of evidence are for the Commission; this Court simply determines whether the record contains any evidence tending to support the finding. *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Findings of fact not assigned as error are conclusively established on appeal. *Robertson v. Hagood Homes, Inc.*, 160 N.C. App. 137, 140, 584 S.E.2d 871, 873 (2003).

I

[1] We first consider defendants' contention that the Commission erred in concluding that Mr. Hensley is totally disabled under N.C. Gen. Stat. § 97-29 (2003), as opposed to partially disabled under N.C. Gen. Stat. § 97-30 (2003), given the income that he receives from his ownership of a tobacco allotment and a mobile home park. The Supreme Court in *Lanning* set forth the test to be applied in determining whether an employee's ownership of a business supports a finding of earning capacity:

> [T]he test for determining whether the self-employed injured employee has wage-earning capacity is that the employee (i) be actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education and experience. In the instant case, given plaintiff's exertional limitations, education, and experience, would he be hired to work in the competitive market place?

*Lanning*, 352 N.C. at 107, 530 S.E.2d at 61.

The Court stressed that questions regarding whether plaintiff's self-employment involves marketable skills and whether plaintiff is actively involved in the day-to-day operation of the business "are questions of fact." *Id.* at 108, 530 S.E.2d at 61. In *Lanning*, the Court held that this Court "usurped the fact-finding role of the Commission"

when it made these determinations. *Id.* The Supreme Court reversed this Court and directed that the case be remanded to the Commission to make the necessary findings of fact. *See also Devlin v. Apple Gold, Inc.*, 153 N.C. App. 442, 448, 570 S.E.2d 257, 262 (2002) (finding that although the Commission made adequate findings as to the employee's involvement in day-to-day operation of his business, it failed to make findings as to whether the employee's management skills "are competitively marketable in light of his physical limitations, age, education and experience"). In this case, the Commission made the findings required by *Lanning* and, more recently, *Devlin.* The issue on appeal is whether those findings are supported by any competent evidence.

With respect to the tobacco allotment, the Commission found that "[a]fter working tobacco since 6th grade, [Mr. Hensley] has been forced by his compensable injuries to lease the allotment to non-family members for the last two seasons. Prior to his knee injuries, [Mr. Hensley] raised tobacco and put hay up, which he can no longer do." Defendants did not assign error to this finding and it is therefore binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Because the Commission's finding is binding, it conclusively establishes that Mr. Hensley was not actively involved in the day-to-day operation of his tobacco allotment. *Lanning*, 352 N.C. at 108, 530 S.E.2d at 60. As this finding of fact establishes that the tobacco allotment did not meet one prong of the *Lanning* two-prong test, we need not address whether Mr. Hensley gained any marketable skills from his tobacco allotment. Under *Lanning*, the Commission's finding supports its conclusion that Mr. Hensley's income from the tobacco allotment did not establish wage-earning capacity.

The major focus of defendants' appeal is Mr. Hensley's ownership of the mobile home park. With respect to the mobile home park, the Commission found "that the skills shown by plaintiff in setting up and running his mobile home park are not transferable to a job for hire" and that "[t]here was no showing that there was a job in the competitive environment consisting of the minimal things that plaintiff did to collect income from [his trailer park and tobacco allotment]."[1]

---

1. This latter finding was labeled a conclusion of law. Findings of fact that are mislabeled conclusions of law are, nonetheless, factual findings. *Gainey v. N.C. Dep't of Justice*, 121 N.C. App. 253, 257 n.1, 465 S.E.2d 36, 40 n.1 (1996) ("Although denominated as a conclusion of law, we treat this conclusion as a finding of fact because its determination does not involve the application of legal principles.").

These findings are supported by the expert testimony of Mr. Adams:

Q: Okay. Would he have had any transferable skills from that mobile home park work as you understood it?

A: No. He was the owner of the mobile home park by virtue that he, this is investment for him. He saved his money and he bought it. In other words, he's kind of the self-appointed supervisor, you know. In other words, there, there's not any real skills that would've been developed . . . from this job or sole proprietorship that would be transferable to a system performing other work.

Defendants urge that it can be "inferred from the record" that Mr. Hensley's skills in owning the mobile home park would qualify him for a number of jobs, such as trash collector or ticket collector, but defendants offered no evidence to support this claim. Even if defendants had, Mr. Adams' testimony would still comprise sufficient evidence to support the Commission's finding that Mr. Hensley's ownership of the mobile home park did not meet the second prong of the *Lanning* test.

Defendants argue that Mr. Adams' testimony is not competent because he based his assessment on Dr. Griffin's opinions rather than the opinions of Mr. Hensley's treating physician, Dr. Cappiello. Defendants also urge that the Commission should not have given greater weight to Dr. Griffin's opinion than Dr. Cappiello. Defendants make no other argument regarding the competency of Dr. Griffin and Mr. Adams.

Our Supreme Court has squarely held that only the Commission may determine what weight to afford which evidence. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) ("the [F]ull Commission is the sole judge of the weight and credibility of the evidence"). The Commission was entitled to choose, as it did, to give greater weight to Dr. Griffin than Dr. Cappiello and it was entitled to determine that Mr. Adams' testimony was credible even though he relied upon Dr. Griffin rather than the treating physician. *Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 710-11, 599 S.E.2d 508, 515 (2004) (Commission could not be reversed for failing to give greater weight to the treating physician's opinion); *Drakeford v. Charlotte Express*, 158 N.C. App. 432, 441, 581 S.E.2d 97, 103 (2003) (Commission entitled to credit one doctor's testimony over a second

doctor). Under our standard of review, if there is competent evidence to support the Commission's findings of fact, those findings must stand, even if there is evidence to the contrary. *Dial v. Cozy Corner Rest., Inc.*, 161 N.C. App. 694, 697, 589 S.E.2d 146, 149 (2003).[2]

## II

**[2]** Defendants further challenge the Commission's conclusion that Mr. Hensley is totally disabled on the grounds that the Commission failed to make findings as to all the evidence presented. Specifically, defendants contend that the Commission erred (1) in giving no reason why it disregarded the opinion of the treating physician and (2) in not making detailed findings about defendants' surveillance videotape. We disagree.

Our Supreme Court has recently described the responsibilities of the Industrial Commission:

> The Commission, having exclusive original jurisdiction over workers' compensation proceedings, is required to hear the evidence and file its award, "together with a statement of findings of fact, rulings of law, and other matters pertinent to the questions at issue." N.C.G.S. § 97-84 (2003). While the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award.

*Johnson*, 358 N.C. at 705, 599 S.E.2d at 511. As this Court has held, the Commission need not make exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence. *Smith v. Beasley Enters., Inc.*, 148 N.C. App. 559, 562, 577 S.E.2d 902, 904 (2002).

Here, defendants do not point to any omission of "crucial and specific facts upon which the right to compensation depends[.]" *Johnson*, 358 N.C. at 705, 599 S.E.2d at 511. Indeed, the Commission made comprehensive findings of fact addressing each issue to be decided. Nor can defendants contend that the Commission failed to indicate that it considered or weighed all the evidence. *Beasley*, 148 N.C. App. at 561, 577 S.E.2d at 904. The Commission made specific

---

2. For the same reason, we find no merit to defendants' contention that the Commission erroneously relied upon testimony by Mr. Hensley's longtime friends. Only the Commission may decide credibility.

findings about Dr. Cappiello and his treatment of Mr. Hensley. It also included a finding of fact summarizing the videotape surveillance report, including the dates and hours of the surveillance and generally what was observed. These findings show that it considered all the evidence. Nothing more was required. *Deese*, 352 N.C. at 116-17, 530 S.E.2d at 553 ("Requiring the Commission to explain its credibility determinations . . . would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another."); *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 62 (Commission not required to explain why it rejected certain doctor's testimony), *disc. review denied*, 349 N.C. 228, 515 S.E.2d 700 (1998).

Defendants asserted in oral argument that their remaining contentions were dependent upon this Court's holding that the Commission erred in concluding that Mr. Hensley is totally disabled. Because of our disposition of this appeal, we need not address those arguments.

Affirmed.

Judges BRYANT and ELMORE concur.