***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On June 18, 2004, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On June 18, 2004, an employment relationship existed between Plaintiff and Defendant-Employer. Defendant-Employer is self-insured for workers' compensation insurance.
3. On June 18, 2004, Plaintiff sustained injuries to her spine arising out of and in the course of her employment with Defendant-Employer. Defendant-Employer filed a Form 60 for Plaintiff's injury on or about July 22, 2004.
4. Plaintiff's average weekly wage is $659.28, yielding a compensation rate of $439.54.
5. Plaintiff moved to Florida in November 2004.
6. On or about May 10, 2007, the parties agreed that Dr. Antonio Castellvi would examine and treat plaintiff.
7. Dr. Antonio Castellvi first saw plaintiff on May 10, 2007.
8. On November 14, 2007, Dr. Castellvi recommended Plaintiff undergo a two-level cervical fusion.
9. On November 14, 2007, Dr. Castellvi excused Plaintiff from all work until after the recommended surgery.
10. Beginning November 14, 2007, Defendant paid Plaintiff temporary total disability compensation at the rate of $471.46 per week. Since that time, Defendant has overpaid Plaintiff and is entitled to a credit for the overpayment pursuant to N.C. Gen. Stat. § 97-42.
11. Defendant denied authorization for Plaintiff's surgery.
12. On December 21, 2007, Plaintiff filed a Motion to Compel Authorization of Medical Treatment.
13. By Order dated January 23, 2008, Special Deputy Commissioner Meredith Henderson denied Plaintiff's motion in the administrative forum, indicating that the issues raised *Page 3 
would be more appropriately addressed in a full evidentiary hearing before a Deputy Commissioner upon the filing of a Form 33 Request for Hearing.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 52 years old. At the time of her injuries, Plaintiff lived in Laurinburg, North Carolina, but has since moved to Florida.
2. Plaintiff obtained a GED and attended some technical college courses. She has worked as a seamstress and in retail, including retail management. Plaintiff worked in several of Defendant's stores between 1998 and 2004. In 2004, she had been working in the Laurinburg store for about two years.
3. On June 18, 2004, Plaintiff was working as an assistant manager in the photo department. A shoplifter trying to run from the store pushed her out of the way and into some metal shelving. Plaintiff's neck hit the shelving and Plaintiff fell to the floor. Plaintiff then went to a magistrate with Defendant's loss prevention officer to press charges. Plaintiff testified that while she was at the magistrate's office, her neck began to hurt significantly. Plaintiff was subsequently taken per Defendant's direction to Scotland Urgent Care Center, where she was examined and excused from work for two days.
4. On follow-up with Dr. James Staten at Scotland Memorial Hospital on June 21, 2004, Plaintiff was diagnosed with a thoracic contusion and cervical strain. Medication, physical therapy, and work restrictions were recommended.
5. A July 28, 2004 MRI of Plaintiff's cervical spine revealed multilevel degenerative disc disease and some degenerative joint disease, particularly at C6-7. When conservative *Page 4 
treatment did not improve Plaintiff's symptoms, Dr. Staten recommended evaluation and treatment with an orthopedic physician.
6. On September 3, 2004, at Defendant's direction, Plaintiff presented to Dr. Dixon W. Gerber, an orthopedic physician in Lumberton, North Carolina. She reported neck and upper back pain. Dr. Gerber stated that Plaintiff could return to her regular work with certain restrictions and treated her conservatively with pain medications and muscle relaxers.
7. On October 28, 2004, Plaintiff complained to Dr. Gerber of continued back and neck pain and inquired about surgery as a potential treatment option. Dr. Gerber stated that he did not recommend surgery. Because she was relocating soon to Florida, Dr. Gerber instructed Plaintiff to follow up with a physician in Florida upon her arrival there.
8. Plaintiff and her husband moved to Florida in November 2004. After her move, Plaintiff continued to work for Defendant in a local store. She testified that she requested additional medical treatment from Defendant and the Administrator but was never directed to a doctor in Florida.
9. Plaintiff's employment with Defendant ended around December 2004. Thereafter, Plaintiff went to work as a seamstress for Alterations Unlimited, working about six hours a day, three to five days a week. Plaintiff then moved to another town in Florida and worked as a seamstress for Space Coast Uniforms from August 2006 until the business closed in December 2006.
10. Plaintiff testified that she focused on seamstress work instead of retail work because it required less lifting and prolonged standing. Plaintiff testified that she had trouble with her neck and arms while performing sewing work. *Page 5 
11. Beginning about August 2006, counsel for Plaintiff and Defendant began searching for an orthopedic physician in Florida who would be willing to treat Plaintiff. By February 8, 2007, Defendant had located one physician willing to review Plaintiff's case, Dr. Antonio Castellvi in Tampa, Florida.
12. On May 10, 2007, after conducting an initial review of her records, Dr. Castellvi examined Plaintiff. Plaintiff reported neck, upper back, and bilateral arm pain, with weakness, numbness, and tingling in her arms and, at times, her legs. Plaintiff described the 2004 injury by accident and reported that her pain had progressed since the injury.
13. Dr. Castellvi ordered cervical spine x-rays, which revealed degenerative changes at multiple levels, with loss of disc height most prominent at C5-6 and C6-7. Dr. Castellvi diagnosed Plaintiff with displacement of cervical intervertebral disc without myelopathy and degeneration of cervical intervertebral disc. He ordered a cervical CT/myelogram and MRI and upper extremity nerve conduction studies, prescribed medication and physical therapy, and excused Plaintiff from work.
14. The MRI of Plaintiff's cervical spine, completed on June 26, 2007, revealed a herniated nucleus pulposus at C3-4 and mild stenosis at C5 through C7 with bilateral neural foraminal encroachment. The nerve conduction study results were mildly abnormal. On August 15, 2007, Dr. Castellvi prescribed medication and physical therapy and stated that Plaintiff would be a surgical candidate if her condition did not improve. Plaintiff was released to activities as tolerated.
15. In 2007, Plaintiff started her own alterations business, "Alterations by Tess," after being told by her attorney that she needed to find a job. Plaintiff testified that a neighbor did most of the sewing. Plaintiff's husband also did some of the sewing. Plaintiff testified that she *Page 6 
oversees her husband's sewing, "hang[s] out," takes payments, and keeps the books for the business. Plaintiff testified that the business has not turned a profit and she has not received any wages from the business.
16. On November 14, 2007, Dr. Castellvi ordered additional x-rays of Plaintiff's cervical spine. Based on her continued symptoms and the new x-rays, he recommended a C5 through C7 anterior cervical diskectomy and fusion. Dr. Castellvi restricted Plaintiff from all work as of November 14, 2007, with an estimated time of nine weeks out of work.
17. Defendant initiated payment of temporary total disability compensation after November 14, 2007. Defendant retained the services of GENEX to conduct a peer review of the surgical recommendation.
18. On December 31, 2007, GENEX issued an Inpatient Non-Certification Recommendation regarding the surgical recommendation. The GENEX Physician Advisor, Dr. Leon Brooks, recommended non-certification because he did not believe, based on the medical records he had reviewed, that the surgery was warranted. In particular, Dr. Brooks noted that there was no evidence of specific nerve root compromise and the degree of foraminal encroachment found on the MRI was not identified. Dr. Brooks did not examine Plaintiff or observe any of her symptoms. He called Dr. Castellvi's office once, but Dr. Castellvi was on vacation.
19. Dr. Castellvi, a board-certified orthopedic surgeon who has performed spinal surgery for over 25 years, testified to a reasonable degree of medical certainty that there is a causal relationship between the injury and Plaintiff's current condition and need for surgery. Dr. Castellvi stated that the injury, if not the direct cause of Plaintiff's degenerative condition, "by all means" aggravated a pre-existing condition. Dr. Castellvi testified that that the surgery pre-operative *Page 7 
diagnostic tests he recommended are medically necessary in order to treat Plaintiff's condition. Dr. Castellvi disagrees with the conclusion GENEX's non-certification recommendation. Dr. Castellvi testified that, in contrast to the GENEX report, he observed evidence of bilateral foraminal encroachment in Plaintiff's cervical spine.
20. Dr. Brooks, an orthopedic surgeon who works and resides in California, testified that Plaintiff's current symptoms were due to her pre-existing degenerative condition, not the 2004 neck strain injury. Dr. Brooks further testified that he did not feel Plaintiff would benefit from any type of surgical procedure. He did not express this opinion with any stated degree of medical certainty.
21. Dr. Gerber, an orthopedic physician who does not perform surgery, last examined Plaintiff on October 28, 2004. Dr. Gerber testified he does not believe surgery is warranted for Plaintiff. However, he also testified he would defer to Plaintiff's treating physician regarding her current symptoms and complaints.
22. Having considered the testimony of Drs. Castellvi, Brooks, and Gerber, the Full Commission assigns greater weight to the testimony of Dr. Castellvi, the only physician to have personally examined, treated, or observed Plaintiff in approximately 4 ½ years. The Full Commission finds that plaintiff's current condition and need for surgery are related to her 2004 compensable injury. The two-level cervical fusion and pre-operative procedures and testing recommended by Dr. Castellvi are reasonably necessary to affect a cure, provide relief, and to lessen Plaintiff's period of disability.
23. Plaintiff remains restricted from all work per Dr. Castellvi pending the recommended surgery. According to Plaintiff's testimony, her alterations business was still in operation up to the March 3, 2008 hearing before the Deputy Commissioner, but had yet to earn *Page 8 
a profit. While the evidence established that Plaintiff was involved in the business most days, the evidence was insufficient to establish that Plaintiff's oversight and management of the business demonstrated skills that would enable her to find a job in the competitive marketplace. The Full Commission finds that Plaintiff is currently disabled from work due to her 2004 compensable injury.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to her back as a result of an accident arising out of and in the course of her employment with Defendant on June 18, 2004. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence establishes a causal relationship between Plaintiff's injury by accident of June 18, 2004, and her current back condition for which Dr. Castellvi has recommended surgery, and thus the condition is compensable. Hoyle v. CarolinaAssociated Mills, 122 N.C. App. 462, 470 S.E.2d 357 (1996); Smith v.Champion Int'l, 134 N.C. App. 180, 517 S.E.2d 164 (1999).
3. Under the circumstances in this case, Plaintiff's ownership of and involvement in her alterations business do not demonstrate wage earning capacity. Plaintiff has been temporarily totally disabled since November 14, 2007, and is entitled to payment of temporary total disability compensation at the rate of $439.54 per week from that date until further Order of the Commission. Lanning v. Fieldcrest-Cannon,Inc., 352 N.C. 98, 530 S.E.2d 54 (2000); Devlin v. Apple Gold,Inc., 153 N.C. App. 442, 570 S.E.2d 257 (2002); N.C. Gen. Stat. § 97-29. *Page 9 
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of her compensable back condition that may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including payment for the pre-surgical and surgical recommendations of her authorized treating physician, Dr. Antonio Castellvi. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee previously approved by Order of the Commission dated March 27, 2008, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $439.54 per week until further Order of the Commission.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's compensable back condition, including payment for the treatment recommendations of Dr. Antonio Castellvi.
3. Defendant shall pay the costs.
This the __ day of June 2009.
S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING: *Page 10 
 S/___________________ BERNADINE S. BALANCE COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER
 *Page 1