***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen, with modifications.
 *********** MOTIONS
On July 5, 2011, Plaintiff filed a motion to compel Defendants to comply with the February 28, 2011 Opinion and Award by Deputy Commissioner Gillen regarding Plaintiff's medical treatment. Plaintiff's motion is denied. See Norman v.Food Lion, ___ S.E.2d ___(2011). *Page 2 
Also, on July 5, 2011, Plaintiff filed a motion to have Defendants reimburse Plaintiff for travel expenses related to her medical treatment for her compensable injury, including travel expenses related to her vocational rehabilitation. Plaintiff's motion for the reimbursement of travel expenses is hereby granted.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Plaintiff is Sharon Robinson.
3. Defendant-Employer is Wal-Mart Stores, Inc.
4. Defendant-Carrier is American Home Assurance Company.
5. On June 1, 2006 Defendant-Employer regularly employed three or more employees and was bound by the provisions of the North Carolina Workers' Compensation Act.
6. An employment relationship existed between Plaintiff and Defendant-Employer on June 1, 2006.
7. Plaintiff sustained a compensable injury under the provisions of the North Carolina Workers' Compensation Act on June 1, 2006.
8. Defendants accepted liability for a low back strain by means of an Industrial Commission Form 60.
9. Plaintiff's average weekly wage is $1,033.52. *Page 3 
10. Defendant-Carrier paid Plaintiff compensation based upon estimated average weekly wages of $1,037.46 from July 3, 2006 through June 11, 2007, and based upon the stipulated average weekly wages of $1,033.52 beginning June 12, 2007. In particular, Defendant-Carrier paid Plaintiff compensation (i) pursuant to N.C. Gen. Stat. § 97-30 at varying rates from July 3, 2006 through August 28, 2006, (ii) pursuant to N.C. Gen. Stat. § 97-29 from August 29, 2006 through June 11, 2007 at the rate of $691.64 per week, and (iii) pursuant to N.C. Gen. Stat. § 97-29 from June 12, 2007 through the present and continuing at the rate of $689.01 per week.
 ***********
The following were entered into evidence before the Deputy Commissioner as:
 STIPULATED EXHIBITS a. The Pretrial Agreement, marked as stipulated exhibit 1.
 b. A collection of documents including the Industrial Commission forms and filings in this matter, medical records, rehabilitation records, discovery information, and employment records, collectively marked as stipulated exhibit 2.
 c. The parties' written stipulation concerning expert witness testimony, marked as stipulated exhibit 3.
 *********** ISSUES PRESENTED
1. Whether Plaintiff has been disabled as a result of the June 1, 2006 injury she sustained at work, and, if so, to what extent? *Page 4 
2. Have Defendants overpaid compensation to Plaintiff, and, if so, to what extent should the Commission award an offset or credit as a result of this overpayment?
3. Whether Defendants are entitled to terminate or suspend payments of compensation pursuant to N.C. Gen. Stat. § 97-18.1 and Industrial Commission Rule 404?
4. Whether Plaintiff is entitled to receive future medical treatment from Dr. Eisinger?
5. Whether Plaintiff is entitled to vocational rehabilitation?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 47 years of age at the time of the hearing before the Deputy Commissioner. Plaintiff began working for Defendant-Employer in May 1989 as a floor associate. Plaintiff received several promotions and was working as a night manager for Defendant-Employer on June 1, 2006. The night manager position involved physical labor as well as supervisory duties. Prior to her injury, Plaintiff had been employed by Defendant-Employer for approximately 17 years.
2. Plaintiff received a degree in physical education from Shaw University in 1985. Prior to working for Defendant-Employer, Plaintiff worked for various restaurants as a cook and cashier.
3. Throughout her employment with Defendant-Employer, Plaintiff held other jobs concurrent with her employment with Defendant-Employer. In 2004, Plaintiff began owning and operating a vending machine company, Quick's Vending. *Page 5 
4. On June 1, 2006, as Plaintiff was removing a battery from a forklift while working for Defendant-Employer, Plaintiff sustained a back injury. The forklift battery weighed approximately 2,800 pounds. Although a hoist or crane is used by the workers to perform the forklift battery removal task, the process is still physically demanding and normally two workers collaborate to perform the task. However, on June 1, 2006, Plaintiff attempted to remove the forklift battery by herself.
5. On June 3, 2006, Plaintiff composed a written account recounting the night of the injury. Plaintiff spoke to James Fincannon, her supervisor, after sustaining the injury. Plaintiff informed Mr. Fincannon of her desire to seek medical care. Mr. Fincannon explained to Plaintiff that if she left to seek medical treatment that her absence would count against her attendance. Plaintiff was terminated by Defendant-Employer subsequent to the injury.
6. Plaintiff was treated by Dr. Jill L. Benson at WakeMed Emergency Services immediately following the injury on June 2, 2006. Dr. Benson explained that Plaintiff could return to work on June 4, 2006, under a 10-pound lifting restriction.
7. On July 12, 2006, Plaintiff began seeing Dr. Patterson at Raleigh Orthopaedic Clinic. Dr. Patterson diagnosed Plaintiff with thoracolumbar strain/sprain and thoracolumbar spondylosis. Dr. Patterson assigned work restriction of not working more than four hours per day, change positions frequently, limited lifting, pushing, and pulling, and no lifting more than three to five pounds.
8. Defendants filed an Industrial Commission Form 60 dated July 17, 2006 accepting the compensability of this claim. This Form identified the accepted injury as a low back strain and reflected that Plaintiff's disability began on July 3, 2006, with disability compensation commencing on July 17, 2006. *Page 6 
9. On August 29, 2006, as a result of Plaintiff's pain increasing, Dr. Patterson wrote Plaintiff out of work completely. Plaintiff received an epidural steroid injection on September 12, 2006 which provided very little benefit. On October 19, 2006, Dr. Patterson noted he was not sure that he had much more to offer Plaintiff and that he did not think Plaintiff was ready to return to work. Plaintiff was subsequently treated with injections by Dr. Gary L. Smoot, but without good results. On December 21, 2006, Dr. Patterson noted that Plaintiff could return to work on January 2, 2007, but only in a sedentary capacity.
10. Plaintiff continued to experience debilitating pain and was seen by Dr. Dennis L. Bullard. On December 3, 2007, Dr. Bullard referred Plaintiff back to Dr. Patterson for consideration of facet blocks and/or rhizotomies in addition to continued conservative therapy. Dr. Bullard also felt that, since no surgery was involved, Plaintiff's job limitations, restrictions, and final maximum medical improvement would have to be deferred to Dr. Patterson. Dr. Bullard felt that a functional capacity evaluation would be needed before Plaintiff returns to work.
11. Dr. Patterson subsequently released Plaintiff as of February 27, 2008, with permanent work restrictions of no lifting greater than five pounds, no bending or stooping, and alternating between sitting and standing.
12. Following her release by Dr. Patterson, Plaintiff began seeking other employment. Plaintiff conducted a reasonable, yet unsuccessful job search for alternative employment. In 2008, Plaintiff studied an Early Childhood Development curriculum at Wake Technical Community College at her own expense. Plaintiff was unable to pursue employment in this field, because she realized that she would be unable to perform the bending and lifting tasks required of a childcare worker. *Page 7 
13. On September 12, 2007, defendant directed plaintiff to submit to an evaluation by Dr. Robert Lacin. Dr. Lacin recommended that plaintiff "be enrolled in a rehabilitation program with a rehabilitation center that has experience in taking care of low back pain patients without surgical pathologies."
14. Next, defendant instructed plaintiff to submit to an evaluation by Dr. Robert Summers. The evaluation took place on February 16, 2010. Dr. Summers expressed the opinion that plaintiff had no work restrictions as a result of her 1 June 2006 injury.
15. Plaintiff underwent a functional capacity evaluation (FCE) on May 25, 2010. The report generated by this Functional Capacity Evaluation explains that "[Plaintiff] functions in the LIGHT Physical Demand Level According to the U.S. Department of Labor Standards during an 8 hour work day, full time, with occasional positional changes with rest breaks during sitting, standing, lifting activities." The report also notes that "[Plaintiff] performed all activities as requested demonstrating a consistency with 14/15 isometric tests, which may demonstrate maximum effort."
16. On August 6, 2010, Plaintiff began seeing Dr. Dina Eisinger. The medical record from this visit reflects Dr. Eisinger's beliefs that Plaintiff is not at maximum medical improvement, that Plaintiff would benefit from pain management, and that it is very likely that Plaintiff will require future medical treatment for the June 1, 2006 injury. Dr. Eisinger agreed with the restrictions noted in the May 25, 2010 FCE report. Dr. Eisinger recommended a thoracic MRI. Dr. Eisinger recommended a limitation of occasional lifting of no more than 25 pounds and 10 pounds frequently. She also recommended avoidance of repeated bending, stooping, and twisting. Dr. Eisinger is willing to provide plaintiff's future medical treatment and *Page 8 
Plaintiff is more comfortable with Dr. Eisinger than with the other doctors who have treated her in this matter.
17. In August 2010, Plaintiff began receiving vocational assistance from Ms. Angela Prenoveau. Ms. Prenoveau testified that the probability of Plaintiff returning to suitable employment would be "greater if [Plaintiff] receives vocational rehabilitation." Ms. Prenoveau conducted a vocational assessment, in which she concluded that plaintiff "will benefit tremendously from job seeking skills training, resume development, job search, vocational guidance and overall advocacy in regard to a successful return to employment." Plaintiff has fully participated in her vocational rehabilitation. Plaintiff continues to receive vocational rehabilitation, meeting weekly with her counselor. Plaintiff has attended all meetings with her counselor. She has contacted all job leads provided by her counselor, but she has not received any employment interviews or job offers.
18. Regarding the causal relationship between Plaintiff's current disability and the June 1, 2006 workplace injury, Dr. Eisinger explained that the workplace injury led to Plaintiff's back condition "becoming symptomatic — causing the inflammation in those areas, causing the spasm and so on, I think that would be caused by the work injury."
19. Dr. Eisinger also testified that Plaintiff would benefit from future medical treatment for her back condition. Specifically, Dr. Eisinger explained that Plaintiff should have a thoracic spine MRI to inform future treatment as well as SI joint injections to treat her current pain.
20. Dr. Summers opined that Plaintiff's work-related injury may have caused an aggravation of her preexisting spinal arthritis, and perhaps degenerative disc, but that the aggravation should have resolved by the time that he saw her in February of 2010. *Page 9 
21. Having considered the opinions of Dr. Eisinger, Dr. Patterson, Dr. Lacin, and Dr. Summers, the Full Commission gives greater weight to the expert opinions of Dr. Patterson and Dr. Eisinger.
22. Although Plaintiff has continued to own and operate her vending machine business subsequent to the June 1, 2006 injury, Plaintiff's friends and family have helped Plaintiff with the physical stocking tasks and collecting money since the injury. Since her injury, Plaintiff has not been actively involved in the day-to-day operation of Quick's Vending. Plaintiff does not utilize skills in the operation of Quick's Vending that would enable her to be employable in the competitive marketplace when considered in conjunction with the her impairment, age, education and experience.
23. On June 1, 2006, Plaintiff suffered a compensable specific traumatic incident of the work assigned that arose out of and in the course of her employment with Defendant-Employer during a judiciably cognizable time period when she strained her back while removing a forklift battery.
24. Due to the circumstances surrounding Plaintiff's termination from employment while under restrictions following the admittedly compensable injury, it has not been established that Plaintiff's termination was for a reason unrelated to the June 1, 2006 injury, for which a non-injured employee would have been terminated.
25. Based upon the credible medical and vocational evidence of record, the symptoms and consequent disability suffered by Plaintiff subsequent to the June 1, 2006 incident were a direct and natural result of, and causally related to the June 1, 2006 incident.
26. The Full Commission finds based upon the greater weight of the evidence that, as a result of the June 1, 2006 compensable injury, there is a substantial likelihood that Plaintiff will *Page 10 
need future medical treatment reasonably related to the compensable injury.
27. Given the circumstances of this case, Dr. Eisinger is the best physician to direct Plaintiff's medical care at this time. Plaintiff's treatment, as directed by Dr. Eisinger, is reasonably required to provide relief from Plaintiff's compensable conditions.
28. The greater weight of the evidence establishes that the medical treatment Plaintiff received subsequent to June 1, 2006 was reasonable and medically necessary, and was reasonably required to effect a cure, give relief, and lessen the period of disability from Plaintiff's compensable injury. This treatment includes but is not limited to medical treatment provided by Dr. Eisinger and vocational rehabilitation provided by Ms. Prevoneau.
29. Although plaintiff is capable of some work, she has after a reasonable effort on her part, been unsuccessful in her effort to obtain employment, both independently and with the assistance of vocational rehabilitation services. The credible medical and vocational evidence of record shows that, as a result of Plaintiff's June 1, 2006 injury, and the causally related conditions suffered by Plaintiff subsequent to the June 1, 2006 injury, Plaintiff has been unable to earn the same wages she was earning at the time of the injury in the same or any other employment.
30. Plaintiff's average weekly wage on June 1, 2006, was $1,033.52, as stipulated to by the parties.
 ***********
Based upon the foregoing Stipulations and Findings of Fact the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 11 
1. On June 1, 2006, Plaintiff sustained an admittedly compensable injury to her back as a result of a specific traumatic incident of the work assigned that arose out of and in the course of her employment with Defendant-Employer during a judicially cognizable time period. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase,Inc., 116 N.C. App. 703, 707 (1994), cert. denied,339 N.C. 737 (1995). This compensable injury caused Plaintiff's back condition or materially accelerated or aggravated a preexisting condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr., 129 N.C. App. 361, 364 (1998).
2. Plaintiff's ownership of Quick's Vending is not evidence that she retains earning capacity because she is not actively involved in the day-to-day operation of the business and she does not utilize skills in the operation of the business that would enable her to be employable in the competitive marketplace, when considered in conjunction with the her impairment, age, education and experience. Lanning v. Fieldcrest-Cannon, Inc.,352 N.C. 98, 107, 530 S.E.2d 54, 61 (2000); Devlin v. Apple Gold,Inc., 152 N.C. App. 442, 570 S.E.2d 257 (2002).
3. Plaintiff can prove disability by (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowe's ProductDistrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). In the present case the evidence shows that, after a reasonable effort on her part, Plaintiff has been unsuccessful in her efforts to obtain employment within her restrictions. *Page 12 
4. As stipulated to by the parties, Plaintiff's average weekly wage is $1,033.52, yielding a compensation rate of $689.05. N.C. Gen. Stat. § 97-29. As a result of the June 1, 2006 injury, Plaintiff is entitled to continued payment of temporary total disability compensation at the rate of $689.05 per week from June 2, 2006, until she returns to work or until order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have Defendants provide all medical treatment, incurred or to be incurred, necessitated by the June 1, 2006 admittedly compensable accident, including travel expenses, when bills for the same have been approved pursuant to Industrial Commission procedures. This treatment includes the direction of future medical treatment by Dr. Dina Eisinger and vocational rehabilitation provided by Ms. Angela Prenoveau. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
6. Plaintiff is entitled to have Dr. Eisinger provide and/or direct Plaintiff's medical care and to have Ms. Prenoveau provide Plaintiff with vocational rehabilitation. Id.
7. Due to the circumstances surrounding Plaintiff's termination while she was under restrictions, it has not been established that Plaintiff's termination was for a reason unrelated to her compensable injury, for which a non-injured employee would have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
8. In the Full Commission's discretion Defendants shall receive no offset or credit for any overpayments paid to Plaintiff to date. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following:
 AWARD *Page 13 
1. Defendants shall pay Plaintiff, temporary total disability compensation at a rate of $689.05 per week for the period from June 2, 2006, and continuing until Plaintiff returns to work or further order of the Commission. Any amounts that may have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all of Plaintiff's medical expenses incurred or to be incurred as a result of the admittedly compensable injury, including travel expenses, when the medical bills have been approved according to established Industrial Commission procedures. Going forward, Dr. Dina Eisinger is designated as Plaintiff's authorized treating physician and Ms. Angela Prenoveau shall provide vocational rehabilitation to Plaintiff.
3. A reasonable attorney fee of 25 percent of the compensation due Plaintiff under paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: 25 percent of any lump sum due Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's attorney shall receive every fourth compensation check due Plaintiff.
4. Defendants shall pay the costs.
This the 29th day of July 2011.
 S/________________
 STACI T. MEYER
 COMMISSIONER
CONCURRING:
S/___________ TAMMY NANCE COMMISSIONER *Page 14 
S/_________________ DANNY L. McDONALD COMMISSIONER *Page 1