JAMES RALPH WEAVER, Plaintiff-Employee v. AMERICAN NATIONAL CAN CORPORATION, Defendant-Employer

No. COA95-745

(Filed 6 August 1996)

**Workers' Compensation § 399 (NCI4th)— testimony disregarded by Commission—error**

The Industrial Commission's findings of fact showed that the Commission impermissibly disregarded the testimony of plaintiff's coworkers which corroborated plaintiff's testimony that he had suffered an injury to his back, and the case is therefore vacated and remanded to the Commission for it to consider all of the evidence, make complete findings of fact and proper conclusions of law, and enter an appropriate order.

**Am Jur 2d, Workers' Compensation §§ 602 et seq.**

Appeal by plaintiff from opinion and award entered 13 March 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 21 March 1996.

This case arises from the denial of Workers' Compensation benefits by the Industrial Commission after a hearing before Deputy Commissioner Scott M. Taylor and a review by the full commission.

James Weaver (hereinafter plaintiff) began working at American National Can Corporation (hereinafter defendant) in 1978. In approximately 1982, plaintiff began working as a furnace operator for defendant. Plaintiff's responsibilities included operating the machinery that mixes the raw materials and melts them into glass. At times, the raw material would harden in the storage bins before it could flow into the furnace and plaintiff would have to unplug the obstruction by climbing up a ladder and beating the obstruction loose with a sledge hammer.

In 1988, plaintiff injured his back at work and underwent surgery by Dr. John Leonard to excise a ruptured disc at the L4-L5 region. After the surgery, plaintiff returned to work for defendant. In March or early April 1992, plaintiff was coming home from a church meeting when he felt pain behind his left knee. Plaintiff sought the help of a chiropractor, Dr. Mark Hooper, beginning on 6 April 1992. Plaintiff continued to experience difficulty with his leg, but plaintiff testified that the pain did not affect his ability to perform his job.

On 9 April 1992 while plaintiff was working second shift, plaintiff tried to unplug an obstruction in a storage bin with another employee, Mike Jernigan. Plaintiff testified that as he hit the storage bin with the sledge hammer, "something felt like it busted in my back and run all over. I felt excruciating pain going down—my lower back and down the left leg." Plaintiff testified that "I almost fell and caught myself and just eased down" the ladder. Mr. Jernigan testified that plaintiff looked like "he was in real—a whole lot of pain" so Mr. Jernigan told plaintiff to take it easy while Mr. Jernigan unplugged the obstruction. Mike Trail, a raw material unloader, testified that plaintiff came into the control room on 9 April 1992 and told Mr. Trail that "he thought he had pulled something in his back." Mr. Trail observed plaintiff rubbing his back.

Plaintiff testified that he did not report his injury on 9 April 1992 because there was no supervisor present during the second shift. Plaintiff also stated that the medical department was not open at the time of the injury. Plaintiff testified that he told his supervisor, Bob Ryder, about the injury on 10 April 1992 and that Mr. Ryder said he hoped the injury was not serious. Mr. Ryder testified that he knew plaintiff was having back problems in March and April of 1992 but that plaintiff never told him that he had injured his back at work and that Mr. Ryder first learned of the alleged incident after plaintiff filed an Industrial Commission Form 18 on 20 August 1992.

Plaintiff continued to work second shift although the pain continued to increase in his leg and lower back. On 14 April 1992, Dr. Hooper gave plaintiff a note excusing him from work. Plaintiff testified that he gave the note to George Clayton, the personnel manager for defendant, at an awards luncheon for perfect attendance. Plaintiff testified that Mr. Clayton talked to the plant manager and that they decided that they wanted plaintiff to see Dr. Leonard. Plaintiff saw Dr. Leonard on 16 April 1992 and Dr. Leonard diagnosed plaintiff as "most likely" having suffered a new injury to the L5-S1 region. Dr. Leonard gave plaintiff a note taking him out of work until Dr. Leonard released him. Plaintiff underwent surgery on 27 April 1992 and then received physical therapy for fourteen weeks. In his deposition, Dr. Leonard testified:

> It's my opinion—based on this history of a worsening of his pain down his leg and the fact that swinging a sledgehammer imparts a flexion strain on the back which can worsen a pre-existing ruptured disk, my opinion is that this may have had

some degree of disk herniation present before he swung the hammer and that when he swung the hammer he caused the cover of the disk to tear completely and extruded the disk. . . . So while I don't feel that the sledgehammer swinging caused the ruptured disk—it may have been there in some form before that—I think that it caused the ruptured disk to extrude or go to its final stage, and that absolutely canceled any idea of recovery without surgery.

Dr. Leonard assigned an eighteen percent permanent partial disability rating to plaintiff's injury.

Dr. Leonard released plaintiff to return to work on 12 October 1992, but defendant first wanted plaintiff to see the company doctor. After receiving the doctor's report, defendant would not allow plaintiff to return to work. Plaintiff testified that George Clayton told plaintiff that he should "sign up for SSI disability and for unemployment." On 1 February 1993, plaintiff finally was allowed to return to work as a line attendant. Plaintiff remained in that position for approximately four weeks and then returned to his former job as a furnace operator.

Plaintiff filed a claim with the North Carolina Industrial Commission for Workers' Compensation on 24 August 1992. After conducting a hearing on 18 May 1993, the deputy commissioner denied plaintiff's claim, finding that plaintiff's testimony was not credible and concluding that plaintiff had not suffered an injury arising out of or in the course of his employment. Plaintiff appealed to the full commission, which affirmed the deputy commissioner's recommended decision. Commissioner James J. Booker dissented and plaintiff appeals.

*Patterson, Harkavy & Lawrence, L.L.P., by Henry N. Patterson, Jr. and Martha A. Geer, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Henry W. Gorham and Karen K. Prather, for defendant-appellee.*

EAGLES, Judge.

Plaintiff argues that the record does not support the Industrial Commission's findings of fact and that the Industrial Commission's conclusions of law are not supported by its findings of fact. In Workers' Compensation cases, the Industrial Commission's findings of fact are conclusive on appeal if there is any competent evidence to

support them, even if there is conflicting evidence. *Richards v. Town of Valdese*, 92 N.C. App. 222, 225, 374 S.E.2d 116, 118 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989). The Industrial Commission's conclusions of law are fully reviewable on appeal. *Id.* Before making findings of fact, the Industrial Commission must consider *all* of the evidence. The Industrial Commission may not discount or disregard any evidence, but may choose not to believe the evidence *after* considering it. *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied*, 300 N.C. 196, 269 S.E.2d 623 (1980).

Here, the Industrial Commission, without receiving further evidence, reviewed the opinion and award of the deputy commissioner based on the record before the Commission and made findings of fact detailing plaintiff's version of the events of 9 April 1992 plus the following two findings of fact:

6. The Full Commission, however, does not accept plaintiff's testimony as credible, based on plaintiff's testimony and demeanor, and the testimony of other witnesses.

7. Since plaintiff's testimony is not credible, plaintiff did not prove that any injury which he may have sustained on or about 9 April 1992 resulted from a specific traumatic incident of the work assigned, or from an interruption of his normal work routine by the introduction of unusual conditions likely to result in unexpected consequences.

The Industrial Commission's finding of fact number seven provides that because the Industrial Commission did not find plaintiff's testimony credible, plaintiff had not proven his case. The Industrial Commission "is the sole judge of the credibility of the witness and the weight to be given its testimony," *Dye v. Shippers Freight Lines*, 118 N.C. App. 280, 284, 454 S.E.2d 845, 848 (1995), and the Industrial Commission may find that a witness is not credible based on the witness's demeanor during the hearing. *Dye*, 118 N.C. App. at 283, 454 S.E.2d at 848. However, here, the Industrial Commission made no mention of plaintiff's coworkers' testimony which corroborated plaintiff's testimony. Mr. Jernigan testified that plaintiff appeared to be in a lot of pain after he swung at the obstruction in the storage bin: "He's usually like a bull, just real energetic and moving around. But he was—he was in pain." Mr. Jernigan also testified that plaintiff told him that plaintiff "felt like something busted loose in [his] back." Mr. Trail testified that plaintiff told him on 9 April 1992 that he thought he

had pulled something in his back and Mr. Trail observed plaintiff rubbing his back.

We conclude that the Industrial Commission's finding of fact number seven shows that the Industrial Commission impermissibly disregarded Mr. Jernigan's and Mr. Trail's testimony. Accordingly, this case must be vacated and remanded to the Industrial Commission for it to consider *all* of the evidence, make complete findings of fact and proper conclusions of law, and enter an appropriate order.

Vacated and remanded.

Judges JOHN and WALKER concur.