**HUNTER v. APAC/BARRUS CONSTR. CO.**

[188 N.C. App. 723 (2008)]

---

MICHAEL L. HUNTER, EMPLOYEE, PLAINTIFF v. APAC/BARRUS CONSTRUCTION COMPANY, EMPLOYER, ESIS, CARRIER, DEFENDANTS

No. COA07-5

(Filed 19 February 2008)

**1. Appeal and Error— preservation of issues—failure to cite authority—failure to assign error**

Although defendants contend the Industrial Commission erred in a workers' compensation case by its first conclusion of law stating that plaintiff had a presumption of permanent total disability even though defendants contend the presumption of disability resulting from a Form 21 agreement applies only to

**HUNTER v. APAC/BARRUS CONSTR. CO.**

[188 N.C. App. 723 (2008)]

temporary total disability, this assignment of error is dismissed, because: (1) defendants failed to cite any authority for their proposition; (2) this argument is not properly before the Court of Appeals since defendants failed to assign error to this conclusion of law as required by N.C. R. App. P. 10(a); and (3) even after plaintiff pointed out in his brief the lack of assignment of error, defendants did not move to amend the record on appeal to add an assignment of error, nor did they ask in their reply brief for the Court of Appeals to apply N.C. R. App. P. 2.

**2. Workers' Compensation— permanent total disability— wage earning capacity**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff was entitled to permanent total disability benefits as a result of a brain injury he sustained during his employment with defendant even though defendants contend plaintiff was actively involved in running a family farm which allegedly established that plaintiff possessed wage earning capacity, because: (1) defendants failed to assign error to findings of fact that established plaintiff's son was the person responsible for the day-to-day operations of the farm; (2) the Commission's finding regarding plaintiff's limited involvement with the farm was supported by the testimony of plaintiff, plaintiff's son, a neighbor, the farm's CPA, a loan officer, and a grower; (3) while defendants point to the documents signed by plaintiff, the Commission was entitled to credit plaintiff's evidence that he only signed the documents based on his son's age and lack of credit history, and that the documents did not reflect actual involvement in the day-to-day operations of the farm; (4) contrary to defendants' assertion, the Commission did not disregard their expert's testimony, but instead simply did not credit it; and (5) the Commission's findings that plaintiff signed grower agreements and financial documents based on his son being a minor and lacking a credit history, coupled with the responsibilities assumed by the son, reflected adequate consideration and an implicit rejection of defendant's evidence.

**3. Workers' Compensation— vocational rehabilitation—unwillingness to participate**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff's alleged refusal to cooperate with vocational rehabilitation did not preclude an award of disability benefits under N.C.G.S. § 97-25 and N.C.I.C. Rule 703,

**HUNTER v. APAC/BARRUS CONSTR. CO.**

[188 N.C. App. 723 (2008)]

because defendants failed to demonstrate that plaintiff's unwillingness to participate in a sheltered workshop was unreasonable and mandated a denial of benefits.

Appeal by defendants from an opinion and award entered 6 September 2006 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 August 2007.

*Ward and Smith, P.A., by William Joseph Austin, Jr. and Nikiann Tarantino Gray, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Clayton M. Custer and Julie B. Bradburn, for defendants-appellants.*

GEER, Judge.

Defendants appeal from an opinion and award of the North Carolina Industrial Commission concluding that plaintiff is entitled to permanent total disability benefits as a result of injuries he sustained during his employment with defendant employer. On appeal, defendants primarily argue that the Commission should have found that plaintiff was actively involved in the running of a family farm and that this activity established that plaintiff possessed wage-earning capacity. Based upon this Court's standard of review, we hold that the Commission's findings of fact otherwise are supported by competent evidence, and those findings in turn support the conclusions of law. We, therefore, affirm.

Facts

At the time of the hearing, plaintiff was 52 years old and had a high school diploma. He began working for the defendant construction company as a heavy equipment operator on 24 September 1990. In December 1992, plaintiff and his brother also began the Hunter Hog Farm ("the farm"). Prior to being injured, plaintiff was responsible for overseeing the day-to-day operations of the farm. His son grew up helping with the farm and also learning its day-to-day operations.

On 6 May 1996, plaintiff was injured while working for defendant employer when a road sign fell and hit him in the head, resulting in a life-threatening epidural hematoma. Plaintiff was taken to the hospital where he underwent an emergency craniotomy and was released on 10 May 1996. The parties ultimately entered into a Form 21 agreement that was approved by the Commission on 17 June 1996. Plaintiff

has been receiving temporary total disability benefits at a rate of $390.00 per week since 6 May 1996.

As a result of his brain injury, plaintiff suffered a change in personality that caused him to become childish, forgetful, irrational, angry, and unexpectedly belligerent. Plaintiff also experienced headaches, tinnitus, diminished cognitive abilities, anxiety, and depression. He was seen by Dr. Antonio E. Puente, a neuropsychologist, on 84 occasions from 15 July 1996 through 9 December 2002. Dr. Puente continues to be plaintiff's treating doctor. Dr. Puente has diagnosed plaintiff as suffering from a closed head injury with PTSD/anxiety/reactive depression and a chronic organic personality disorder. According to Dr. Puente, plaintiff's brain injury resulted in cognitive and emotional limitations, impairing his memory, organizational skills, and ability to learn new skills and led to volatility, a hypersensitivity to noise, and an inability to perform repetitive tasks for extended periods of time.

Plaintiff was also seen, at defendants' request, by Dr. Margit Royal, a board-certified neurologist, and Dr. C. Thomas Gualtieri, a neuropsychiatrist. Dr. Royal ultimately concluded plaintiff was physically capable of working, but acknowledged that plaintiff may lack the cognitive function, especially with respect to organizational skills, necessary to perform consistently. Dr. Gualtieri diagnosed plaintiff as suffering a traumatic injury to the brain that had resulted in persistent problems, including headaches, tinnitus, cognitive problems, and emotional problems.

Subsequently, defendants requested a hearing to determine "whether Plaintiff is employable and whether Plaintiff is undermining Vocational Rehabilitation and medical diagnosis efforts." The hearing was conducted by the deputy commissioner on 17 October 2002 and 16 December 2003. As reflected in the stipulations set forth in the deputy commissioner's opinion and award, defendants contended "that the Plaintiff's ownership interest in and operation of [the farm] is suitable employment such that he is no longer entitled to receive ongoing total disability benefits." On 22 December 2005, the deputy commissioner awarded plaintiff permanent total disability compensation in the amount of $390.00 per week.

Defendants appealed to the Full Commission, which affirmed the deputy commissioner's opinion and award on 6 September 2006 with minor modifications. The Commission concluded that plaintiff's ownership of the farm was not sufficient to support a finding of wage

**HUNTER v. APAC/BARRUS CONSTR. CO.**

[188 N.C. App. 723 (2008)]

earning capacity based on its factual findings that (1) plaintiff was not involved in the day-to-day operations of the farm; and (2) the skills plaintiff used on the farm would not allow him to be employable in the competitive market place, considering his physical limitations, age, education, and experience. The Commission further concluded that because of plaintiff's compensable brain injury—and the resulting cognitive and emotional conditions—plaintiff would never be able to return to work in competitive employment, and plaintiff was, therefore, entitled to permanent total disability benefits. Defendants timely appealed the opinion and award of the Full Commission to this Court.

## Discussion

Appellate review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). The Commission's findings of fact may only be set aside if there is a "complete lack of competent evidence to support them." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). This Court reviews the Commission's conclusions of law de novo. *Deseth v. LensCrafters, Inc.*, 160 N.C. App. 180, 184, 585 S.E.2d 264, 267 (2003).

[1] Defendants first contend that the Commission erred in concluding that plaintiff had a presumption of permanent total disability. In its first conclusion of law, the Commission stated: "Because the parties entered into a Form 21 Agreement, the plaintiff has the benefit of a presumption of total disability." Defendants argue that the presumption of disability resulting from a Form 21 agreement applies only to temporary total disability and, therefore, should not have been a basis for an award of permanent total disability. Significantly, defendants cite no authority that supports their proposition.

In any event, defendants did not assign error to this conclusion of law. Pursuant to Rule 10(a) of the North Carolina Rules of Appellate Procedure, "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in

accordance with this Rule 10." In the absence of an assignment of error directed to the first conclusion of law, defendants' arguments regarding that conclusion of law are not properly before this Court. *See Taylor v. Carolina Restaurant Group, Inc.*, 170 N.C. App. 532, 540, 613 S.E.2d 510, 515 (declining, pursuant to Rule 10(a), to address defendants' contention that Commission's conclusion of law was contrary to the law, when defendants' assignment of error as to that conclusion of law stated only that it was not supported by competent findings of fact), *aff'd per curiam*, 360 N.C. 173, 622 S.E.2d 492 (2005). We note further that even after plaintiff, in his appellate brief, pointed out the lack of an assignment of error, defendants did not move to amend the record on appeal to add an assignment of error and did not ask, in their reply brief, for this Court to apply N.C.R. App. P. 2. We, therefore, address neither defendants' arguments regarding the presumption nor defendants' contentions regarding plaintiff's purported failure to meet his burden of proof in the absence of the presumption.

[2] Defendants next contend that the Commission erred in determining plaintiff to be permanently and totally disabled because defendants' evidence established plaintiff's wage earning capacity. When a presumption has arisen from a Form 21, " 'the burden shifts to [the employer] to show that plaintiff is employable.' " *Saums v. Raleigh Community Hosp.*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997) (quoting *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257, *disc. review denied and cert. denied*, 341 N.C. 647, 462 S.E.2d 507 (1995)). At that point, "[t]he employee need not present evidence at the hearing unless and until the employer, 'claim[ing] that the plaintiff is capable of earning wages[,] . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations.' " *Id.* at 763-64, 487 S.E.2d at 749 (quoting *Kennedy v. Duke Univ. Med. Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)).

Defendants contend they met their burden by offering evidence regarding plaintiff's involvement with his family farm. The Supreme Court in *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 530 S.E.2d 54 (2000), set forth the test to be applied in determining whether an employee's ownership of a business supports a finding of earning capacity:

[T]he test for determining whether the self-employed injured employee has wage-earning capacity is that the employee (i) be

actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education and experience. In the instant case, given plaintiff's exertional limitations, education, and experience, would he be hired to work in the competitive market place?

*Id.* at 107, 530 S.E.2d at 61.

The Supreme Court stressed in *Lanning* that questions regarding whether plaintiff is actively involved in the day-to-day operation of the business and whether plaintiff's self-employment involves marketable skills "are questions of fact." *Id.* at 108, 530 S.E.2d at 61. In *Lanning*, the Court held that this Court "usurped the fact-finding role of the Commission" when it made these determinations. *Id.* The Supreme Court reversed this Court and directed that the case be remanded to the Commission to make the necessary findings of fact. *Id. See also Devlin v. Apple Gold, Inc.,* 153 N.C. App. 442, 448, 570 S.E.2d 257, 262 (2002) (finding that although the Commission made adequate findings as to the employee's involvement in day-to-day operation of his business, it failed to make findings as to whether the employee's management skills "are competitively marketable in light of his physical limitations, age, education and experience"). In this case, the Commission made the findings required by *Lanning* and, more recently, by *Devlin*. The issue on appeal is whether those findings are supported by any competent evidence.

With respect to the first element of the *Lanning* test, the Commission found:

19. . . . All the testimony, including that from friends or business acquaintances and the plaintiff's brother James Hunter, a former partner in the hog farm, shows that Scott Hunter [plaintiff's son] is a hard-working young man, and that after his father's injury in May 1996, Scott rose to the occasion and basically took over the physical day-to-day operations of the farm.

20. Scott Hunter was a minor and did not have the credit history to take over financial ownership of the farm when his father was first injured. As a result, the plaintiff continued to sign as owner of the business on grower agreements, equipment purchases and financial documents until Scott was able to acquire a one-half ownership interest in Hunter Hog Farm in 2002.

21. Since May 6, 1996, Scott Hunter has been responsible for the day-to-day operations of the hog farm including driving the tractors, mowing the grass, irrigating the animals, pulling out the dead hogs, bailing the hay, operating the equipment, cleaning the hog houses, identifying whether there were sick or diseased animals, ordering the feed and all other tasks related to the hog farm.

. . . .

25. Since his injury by accident, the plaintiff has done a limited amount of work on Hunter Hog Farm, but he is not involved in day-to-day operations or in management of the business. The plaintiff has walked the farm, co-signed loans, purchased equipment and signed grower agreements.

Defendants failed to assign error to findings of fact 19, 20, and 21 and, therefore, those findings are binding on appeal. Those findings establish that Scott Hunter is the person responsible for the day-to-day operations of the farm. Further, the Commission's finding regarding plaintiff's limited involvement with the farm is supported by testimony from Scott Hunter, plaintiff, a neighbor, the farm's CPA, a loan officer, and a grower. While defendants point to the documents signed by plaintiff, the Commission was entitled to credit plaintiff's evidence that plaintiff signed the documents only because of Scott's age and lack of credit history and that the documents did not reflect actual involvement in the day-to-day operations of the farm.

Defendants, however, argue that the Commission failed to take into account testimony from their expert, Dr. Lamb, and lay witnesses testifying about plaintiff's signing of financial documents and engaging in other tasks in connection with the farm. Defendants cite *Weaver v. American Nat'l Can Corp.*, 123 N.C. App. 507, 473 S.E.2d 10 (1996), which held: "Before making findings of fact, the Industrial Commission must consider *all* of the evidence. The Industrial Commission may not discount or disregard any evidence, but may choose not to believe the evidence *after* considering it." *Id.* at 510, 473 S.E.2d at 12.

Defendants hired Dr. Russell Lamb, a Ph.D. agricultural economist, to analyze the farm's financial records. Based upon his review of those records, Dr. Lamb concluded that plaintiff was actively involved in the operation of the farm from 1996 to 2002. Far from disregarding Dr. Lamb's testimony, the Commission included a specific finding of fact explaining why it did not find his testimony persuasive:

24. Dr. Lamb has never met the plaintiff, never talked to any-one who has ever done business with the plaintiff, and has never met Scott Hunter or Dale Hunter[, plaintiff's wife]. Further, Dr. Lamb does not have the expertise necessary to render an opinion about the plaintiff's physical capacity or the extent of the plain-tiff's head injury, or cognitive deficits. He has never visited the Hunter Hog Farm or observed the day-to-day operation. The Full Commission finds that, to the extent that Dr. Lamb's conclusions about the economic status of Hunter Hog Farm are based upon incomplete information about the actual operations of the farm and who manages it and does the work, they are insufficient and not persuasive to establish any wage earning capacity on the part of the plaintiff.

The Commission thus did not disregard Dr. Lamb; it simply did not credit his testimony. "In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and may reject a witness' testimony entirely if warranted by disbelief of that witness." *Lineback v. Wake County Bd. of Comm'rs,* 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997). *See also Pitman v. Feldspar Corp.,* 87 N.C. App. 208, 216, 360 S.E.2d 696, 700 (1987) (holding that the Commission may refuse to believe certain evidence, controverted or not, and may accept or reject the testimony of any witness), *disc. review denied,* 321 N.C. 474, 364 S.E.2d 924 (1988).

Defendants also point to the lay testimony of certain growers who had business contracts with the farm and, defendants argue, sup-ported their contention that plaintiff was in fact still involved in the operation of the farm. While the Commission did not make specific findings addressing that testimony, the Commission is not required to "make exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence." *Hensley v. Indus. Maint. Overflow,* 166 N.C. App. 413, 421, 601 S.E.2d 893, 899 (2004), *disc. review denied,* 359 N.C. 631, 613 S.E.2d 690 (2005). The Commission's findings that plaintiff "signed grower agreements," that plaintiff signed financial documents because Scott Hunter was a minor and lacked a credit history, and the responsibilities assumed by Scott reflect an adequate consideration—and implicit rejection—of defendants' evidence.

Accordingly, we hold that the Commission's finding that plaintiff was not involved in the day-to-day operations of the farm is sup-ported by competent evidence and, therefore, must be upheld on

appeal. "As this finding of fact establishes that the [business] did not meet one prong of the *Lanning* two-prong test, we need not address whether [plaintiff] gained any marketable skills from his [business]." *Id.* at 419, 601 S.E.2d at 898. We, therefore, uphold the Commission's determination that plaintiff's participation in the farm did not establish wage-earning capacity.

**[3]** Alternatively, defendants argue that plaintiff's refusal to cooperate with vocational rehabilitation precludes an award of disability benefits under N.C. Gen. Stat. § 97-25 (2005) and N.C.I.C. Rule 703. Defendants complain that the Commission's determination that plaintiff's refusal to continue at a sheltered workshop was "reasonable" constituted a "*de facto* reversal of the Order compelling plaintiff to attend vocational rehabilitation" and, in combination with its "determination of permanent disability erroneously deprived defendants of the chance to assist plaintiff in regaining any alleged diminished capacity resulting from the injury."

The record indicates that defendants' vocational rehabilitation professional, Robert Manning, Jr., recommended that plaintiff work for a period of time in "supportive employment," also known as a sheltered workshop. In response to a request by defendants, the Commission's Executive Secretary entered an order stating:

> For good cause shown, IT IS HEREBY ORDERED that plaintiff shall comply with reasonable vocational rehabilitation services provided by defendants pursuant to N.C. Gen. Stat. § 97-25, including attempting to attend an interim workshop, after the vocational Rehabilitation Professional observes the plaintiff in his current efforts at returning to work and after the Rehabilitation Professional clearly enunciates the plan for use of the workshop in a report which specifies the maximum length of time the plaintiff should attempt the workshop and how the workshop will aid in returning the plaintiff to suitable employment.

Mr. Manning, in consultation with Dr. Puente, ultimately decided on a two-week period at Omega Enterprises. During an initial tour of the Omega facilities, plaintiff left after a few minutes. The Commission found:

> 18. In December 2000, at the direction of the defendants, the plaintiff visited a sheltered workshop. The plaintiff was overwhelmed by the noise and number of developmentally dis-

abled individuals at the shelter and left after a few minutes. Mr. Manning testified that the attempt to rehabilitate the plaintiff in a sheltered workshop was a wasted cause. The plaintiff's decision to walk out of the sheltered workshop was a reasonable reaction.

Defendants have not made any specific argument, apart from a general citation to N.C. Gen. Stat. § 97-25 and Rule 703, that the Commission was required to suspend benefits despite this finding. Further, even assuming that defendants are correct in arguing that the Commission "de facto" reversed the Executive Secretary when it found that plaintiff's decision not to go through with the Omega trial was "reasonable," defendants have cited no authority and made no specific argument as to why such a reversal would be erroneous.

Defendants argue instead that the finding misstates Mr. Manning's testimony when it indicated that Mr. Manning testified that pursuit of the sheltered workshop was "a wasted cause." We disagree. When asked whether he thought plaintiff would participate in the Omega workshop, Mr. Manning responded: "I didn't really feel any need to pursue—not that I was ever asked to, again, but I certainly felt it was a wasted cause." Thus, the Commission's finding is consistent with Mr. Manning's testimony.

With respect to the Commission's finding that plaintiff's departure from Omega was a reasonable reaction, Mr. Manning explained that he could understand plaintiff's reaction.

Well, I think I used the word, insulted, before and I—I can understand that. . . .

But with the scenario that you've painted—I mean, when you pull up in front of that building and you walk in and somebody walks by with, you know, perhaps not their Sunday best on that's acting a little bit strange, I'll admit to you it could be a little bit intimidating.

Mr. Manning confirmed that Omega was not work in a competitive labor market, but explained the reasoning for the referral to Omega:

[W]ith the problems that [plaintiff] had, I just—I couldn't see going out trying to place him in the job market, but at the same time, as a rehab person, I wasn't about to give up on him. I was just trying to find something that would help him kind of crawl back.

And this may have turned out to be an absolute disaster if we'd gone through with it, but I guess in some sense of the word, at least we'd be that far down the road and know that it was a disaster.

We believe that this testimony supports the Commission's finding that plaintiff's decision to leave Omega was reasonable. Defendants present no other argument supporting their contention that plaintiff's refusal to cooperate precluded an award of benefits.

In this section of their brief, defendants also challenge an unrelated finding of the Commission that "Bob Manning, the vocational rehabilitation expert hired by the defendants, testified that there was 'no way' the plaintiff could get a job in the competitive labor market when one considers his physical and mental limitations." This finding of fact relates to the second prong of the *Lanning* test and, therefore, is immaterial. Nevertheless, this finding is supported by Mr. Manning's deposition. After describing the Omega experience, Manning went on to acknowledge that he "never did go on to recommend a job placement plan or anything like that." He explained that he did not prepare a plan because: "I just can't imagine going hand-in-hand to an employer at that time and . . . trying to give somebody his history and—and to stand there and say yeah, I'm ready to go to work, I'll be here Monday morning. That wasn't going to happen." When asked by plaintiff's counsel if plaintiff would be hired if they had done so, he said, "No, way." The Commission's finding is a reasonable construction of Mr. Manning's testimony.

## Conclusion

Defendants failed to preserve any argument that a presumption of disability did not apply. The burden to prove that plaintiff was employable, therefore, shifted to them. Because the Commission's findings of fact under *Lanning* are supported by competent evidence, and defendants have failed to demonstrate that plaintiff's unwillingness to participate in the Omega sheltered workshop mandated a denial of benefits, we affirm the Commission.

Affirmed.

Judges CALABRIA and JACKSON concur.