An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-312

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

DAVID J. SPAIN,
      Employee,
      Plaintiff,

    v.

DAVID J. SPAIN d/b/a SPAIN'S
MOBILE HOME MOVERS,
      Employer,
COMPANION PROPERTY & CASUALTY
GROUP,
      Carrier,
      Defendants.

North Carolina
Industrial Commission
I.C. No. W28283

Appeal by plaintiff and defendants from opinion and award entered 28 October 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 August 2014.

*Mast, Mast, Johnson, Wells & Trimyer P.A., by Charles D. Mast, for plaintiff.*

*Hedrick, Gardner, Kincheloe & Garofalo, LLP, by M. Duane Jones, Matthew J. Carrier, and Tracie H. Brisson, for defendants.*

GEER, Judge.

Both plaintiff David J. Spain and defendants David J. Spain d/b/a Spain's Mobile Home Movers and Companion Property &

Casualty Group appeal from an opinion and award of the Industrial Commission terminating plaintiff's temporary total disability benefits for his right arm injury by accident, but ordering defendants to authorize and pay for further medical treatment of plaintiff's right arm injury.

On appeal, plaintiff primarily argues that the Commission misapplied the test set forth in *Lanning v. Fieldcrest-Cannon, Inc.*, 352 N.C. 98, 107, 530 S.E.2d 54, 61 (2000), for determining whether a claimant's ownership of a business supports a finding that he has earning capacity such that he is not totally disabled. However, because there is competent evidence to support the Commission's findings that plaintiff has demonstrated wage earning capacity through his active involvement and the skills he obtained in the running of an auto repair shop and those findings support the Commission's conclusion that plaintiff was no longer totally disabled, we affirm the termination of benefits.

Defendants argue that the Commission erred in awarding further medical treatment for plaintiff's right arm complaints and, specifically, for ordering defendants to authorize and pay for plaintiff to undergo a psychiatric evaluation. We hold that the Commission properly applied the presumption set out in *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867

(1997), and found that plaintiff's current complaints are related to plaintiff's original compensable injury, requiring defendants to pay for additional treatment of plaintiff's right arm symptoms, including a psychiatric evaluation related to plaintiff's right arm paralysis.

### Facts

At the time of the hearing before the deputy commissioner, plaintiff was 30 years old. Plaintiff dropped out of high school in the tenth grade and later completed his GED. Prior to working for defendant-employer, plaintiff had worked as a truck driver, mobile home maintenance worker, and tree remover. In 2006, plaintiff was employed by his father, defendant-employer David J. Spain d/b/a Spain's Mobile Home Movers, who was in the business of transporting and setting up mobile homes. Plaintiff's work was very physical in that it involved, among other things, crawling under trailers and lifting up to about 200 pounds.

On 21 November 2006, plaintiff was using an auger machine to drill an anchor into the ground. While holding on to the auger machine with his right hand, plaintiff accidentally drilled into an underground power line and sustained an electric shock injury. Plaintiff was taken to the emergency department of Beaufort County Hospital where he complained of right upper

extremity numbness. On 28 November 2006, defendant-employer filed a Form 19 reporting plaintiff's injury.

Following the injury, plaintiff consistently reported to medical providers that he was unable to move his right upper extremity and was numb below his right elbow. Plaintiff came under the care of Dr. J. Gregg Hardy, a neurologist, whom he initially saw in the emergency room at Pitt County Memorial Hospital on 27 November 2006. After seeing plaintiff on 6 February 2007, Dr. Hardy noted that although proximal muscles of plaintiff's right arm had recovered, plaintiff still reported being unable to move his right hand. Dr. Hardy believed that "there is a probable psychiatric component to this" and ordered a Minnesota Multiphasic Personality Inventory ("MMPI") test for plaintiff.

On 21 March 2007, Dr. Hardy noted that plaintiff was able to move his right wrist, but reported that he was unable to curl or straighten the fingers of his right hand. The MMPI results suggested to Dr. Hardy that plaintiff may have a somatoform disorder, which is a psychological condition. A patient with a somatoform disorder unconsciously focuses on physical symptoms and perceives them as more significant than they actually are. Plaintiff underwent a cervical MRI on 28 March 2007 that showed minimal cervical spondylosis with right eccentric disc bulge at

C5-6 and mild multilevel uncovertebral joint spurring and no evidence of neural impingement or cord deformity.

On 8 May 2007, plaintiff saw Dr. Robert C. Frere, a neurologist, who noted that there was no objective evidence of a lower neuron injury that would account for plaintiff's right hand paralysis. Dr. Frere ordered a brain MRI which showed no acute intracranial abnormality. Dr. Frere referred plaintiff for physical and occupational therapy, but plaintiff, after undergoing therapy, reported on 8 November 2007 no change in his distal right arm weakness. Dr. Frere believed that plaintiff's persistent right upper extremity condition was related to a somatoform disorder and that the original electrical injury more likely than not contributed to plaintiff's psychological condition.

On 8 February 2008, plaintiff presented to Dr. Stuart Busby at the UNC Neurology Clinic, complaining about his right arm and about severe headaches that he had three to four times a week beginning after his injury. On 4 April 2008, Dr. Busby noted that the headaches and paralysis of plaintiff's right arm were probably related to his injury, but concluded that plaintiff had no determinable neurological impairment.

On 9 March 2009, plaintiff saw Dr. Ann Nunez, a physiatrist, who performed a functional capacity evaluation

("FCE") of plaintiff. Dr. Nunez concluded that plaintiff could work at a sedentary capacity and exert up to 10 pounds of force occasionally. On 16 March 2009, Dr. Nunez recommended that plaintiff return to work. She also noted that none of the medical providers had made any physiological findings that could explain plaintiff's continuing inability to move his right upper extremity and recommended a psychiatric evaluation.

On 22 June 2009, defendants filed a Form 60 admitting compensability for plaintiff's injury to his right arm. The form stated that disability resulting from the injury began on 22 November 2006 and that compensation commenced on 29 November 2006.

In February 2010 defendants began providing plaintiff with vocational rehabilitation from Richard Cowan. In July 2010, plaintiff took an online insurance course but did not pass the exam. In June 2011, plaintiff enrolled in an EKG Monitor Technician course, which he successfully completed, but then did not obtain a job in that field.

In January 2011, plaintiff and his wife opened Wharton Station Tire and Auto Care, a business providing auto and truck servicing. Plaintiff obtained an inspection mechanic license and on 4 March 2011, the North Carolina DMV issued Wharton Station an "Official Inspection Station Certificate." Plaintiff

and his wife reported that Wharton Station had a net profit of $22,131.00 for 2011 which constituted the entirety of their reported income for that year. On 23 May 2011 and 8 December 2011, plaintiff executed Form 90s that stated: "I do not know what your definition of work is, but I do hang around Wharton Station Tire & Auto Care during the day and may occasionally try to do something helpful."

On 22 December 2011, defendants filed a Form 24 application to terminate or suspend payment of compensation pursuant to N.C. Gen. Stat. § 97-18.1. The form stated that "[p]laintiff made false and/or misleading statements on an executed and signed Form 90. Plaintiff is not disabled from suitable employment as a result of his accident on November 21, 2006." Defendants filed a Form 33 Request for Hearing dated 28 December 2011. On 8 February 2012 Special Deputy Commissioner Jennifer S. Boyer entered an administrative decision and order stating that she was unable to reach a decision on the Form 24 Application following an informal hearing.

Following a full evidentiary hearing on 26 July 2012, Deputy Commissioner Robert J. Harris entered an opinion and award on 7 March 2013. The deputy commissioner concluded that because plaintiff is actively involved in the daily operation of Wharton Station and has shown that he has wage-earning capacity

in the competitive market, plaintiff was no longer totally disabled and defendants were entitled to terminate payment of temporary total disability compensation. To the extent plaintiff could show that he remained partially disabled, the deputy commissioner found that plaintiff was no longer entitled to partial disability compensation because the 300-week period from the date of plaintiff's injury had passed. The deputy commissioner further concluded that defendants failed to rebut the presumption that further medical treatment for plaintiff's right upper extremity condition was directly related to his original compensable injury, and ordered defendants to authorize and pay for future medical treatment, including a psychiatric evaluation of plaintiff. Both parties appealed to the Full Commission.

On 26 August 2013, plaintiff filed a Notice of Change of Condition and Motion to Reinstate Compensation, or In the Alternative, Motion for New Evidence, asserting that Wharton Station closed on 30 March 2013 because it was operating at a loss. The Commission entered an opinion and award on 28 October 2013 in which it denied plaintiff's motion and affirmed the deputy commissioner's opinion and award. With respect to plaintiff's 26 August 2013 motion, the Commission specified that "[a]ny further issues in this claim related to any period after

11 December 2012[, the date the record was closed,] may be raised by either side through the filing of a new Form 33 *Request That Claim be Assigned For Hearing*." Both parties timely appealed to this Court.

## Discussion

"The scope of this Court's review of an Industrial Commission decision is limited 'to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.'" *Wooten v. Newcon Transp., Inc.*, 178 N.C. App. 698, 701, 632 S.E.2d 525, 528 (2006) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). Findings of fact made by the Commission "are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). "The Commission's conclusions of law are subject to *de novo* review." *Id.*

## Plaintiff's Appeal

Plaintiff argues that the Commission erred in determining that he is no longer totally disabled and that defendants are entitled to terminate payment of temporary total disability compensation. "Disability" is defined as "incapacity because of

injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2013). "When an employee suffers a 'diminution of the power or capacity to earn,' . . . he or she is entitled to benefits under N.C.G.S. § 97-30" for partial disability. *Gupton v. Builders Transp.*, 320 N.C. 38, 42, 357 S.E.2d 674, 678 (1987) (quoting *Branham v. Panel Co.*, 223 N.C. 233, 237, 25 S.E.2d 865, 868 (1943)). However, "[w]hen the power or capacity to earn is totally obliterated, he or she is entitled to benefits under N.C.G.S. § 97-29" for total disability. *Id.*

With respect to partial disability benefits, plaintiff is subject to the provisions of N.C. Gen. Stat. § 97-30 (2009), which limits the total amount of partial disability compensation to 300 weeks from the date of injury. Because in this case, the 300-week period from the date of injury has passed, plaintiff is no longer entitled to partial disability benefits under N.C. Gen. Stat. § 97-30. Therefore, the issue in this case is solely whether plaintiff's earning capacity was "totally obliterated" such that he remains totally disabled. *Gupton*, 320 N.C. at 42, 357 S.E.2d at 678.

Here, the Commission based its denial of total disability benefits on its application of the test set forth by our Supreme Court in *Lanning*. The *Lanning* test is used to determine whether

a claimant's ownership of a business supports a finding of earning capacity:

> [T]he test for determining whether the self-employed injured employee has wage-earning capacity is that the employee (i) be actively involved in the day to day operation of the business and (ii) utilize skills which would enable the employee to be employable in the competitive market place notwithstanding the employee's physical limitations, age, education and experience. In the instant case, given plaintiff's exertional limitations, education, and experience, would he be hired to work in the competitive market place?

352 N.C. at 107, 530 S.E.2d at 61. Whether the two prongs of this test are met "are questions of fact." *Id.* at 108, 530 S.E.2d at 61. In this case, the Commission determined that both the requirements of the *Lanning* test were met.

With respect to the first prong, the Commission found that Wharton Station's website states that it "is run by" plaintiff and his wife. Several of the Commission's findings suggest that plaintiff was physically present at Wharton Station on a regular basis. Specifically, the Commission found that defendants conducted 48 hours of surveillance on plaintiff in July, October and November of 2011, in which plaintiff was observed interacting with people and driving vehicles around the property of Wharton Station; that on 23 May 2011 and 8 December 2011, plaintiff executed Form 90s stating that he "hang[s] around

Wharton Station Tire & Auto Care during the day and may occasionally try to do something helpful"; and that plaintiff's wife testified that plaintiff "provides her with husbandly support, and she likes having him there at Wharton Station, especially after dark."

With respect to the business operations at Wharton Station, the Commission found:

> 53. Wharton Station has hired auto mechanics, who perform the actual physical mechanic's work for the business.
>
> 54. On 4 March 2011, NC DMV issued Wharton Station an "Official Inspection Station Certificate", with plaintiff designated as the licensed inspector working at the location. In order to obtain this license, plaintiff took and passed a class to be an inspection mechanic.
>
> . . . .
>
> 63. As plaintiff testified, he has handled tire orders for Wharton Station. He has also logged in the codes for North Carolina vehicle inspections, although the mechanic performs the inspections themselves. He has also met with customers.
>
> . . . .
>
> 65. As of the hearing before the Deputy Commissioner, plaintiff and his wife had not paid any wages or salaries to themselves from Wharton Station, but they had used the Wharton Station bank account for their personal expenses, including, but not limited to, mortgage payments on their residence.

> 66. Although North Carolina inspections account for only a very small percentage of the revenues for Wharton Station, the sign in front of the business prominently lists "N.C. Inspection" as a draw. As plaintiff's wife testified, although the inspections themselves do not bring in much revenue, she wanted to offer them.

Plaintiff argues that because he did not physically work on the motor vehicles, and there is no evidence that he instructed the mechanics on what to do, the facts of this case are analogous to the facts in *Hunter v. Apac/Barrus Constr. Co.*, 188 N.C. App. 723, 656 S.E.2d 652 (2008). In *Hunter*, the plaintiff's son took over the physical labor involved in the daily operation of the family farm after the plaintiff was injured. *Id.* at 730, 656 S.E.2d at 656. This Court upheld the Commission's finding that the plaintiff was not involved in the day-to-day operations of the farm, noting that although evidence in the record showed that the plaintiff co-signed loans, purchased equipment, and signed grower agreements, "the Commission was entitled to credit plaintiff's evidence that plaintiff signed the documents only because of [his son's] age and lack of credit history and that the documents did not reflect actual involvement in the day-to-day operations of the farm." *Id.* This Court emphasized that "'[i]n weighing the evidence, the Commission is the sole judge of the credibility of

the witnesses and the weight to be given to their testimony, and may reject a witness' testimony entirely if warranted by disbelief of that witness.'" *Id.* at 731, 656 S.E.2d at 657 (quoting *Lineback v. Wake Cnty. Bd. of Comm'rs*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997)).

Similarly, here, the Commission was entitled to weigh the credibility of plaintiff's testimony that he was only minimally involved in the operation of Wharton Station and determine whether his duties reflected actual involvement in the daily operations of the business. In this case, the Commission chose to place more weight on the representations plaintiff made on his website that he and his wife ran Wharton Station, the evidence that plaintiff was physically present at Wharton Station, and the tasks plaintiff himself admitted to performing for the business than to plaintiff's assertion that he merely "hangs out" at Wharton Station or his wife's assertion that he merely provides "husbandly support." We hold that the Commission's finding that plaintiff was involved in the day-to-day operations of Wharton Station is supported by competent evidence and, therefore, is binding on appeal.

With respect to the second *Lanning* prong, the uncontested findings above establish that plaintiff is licensed to be an inspection mechanic and gained experience at Wharton Station

meeting with customers, handling tire orders, and logging in codes for vehicle inspections. The Commission additionally found that plaintiff "has the knowledge to work on motor vehicles" and "has good knowledge about tires." Although plaintiff points to evidence in the record that plaintiff "comes and goes as he feels" and that his presence at Wharton Station was primarily "a marriage support thing" as showing that plaintiff did not utilize any skills at Wharton Station, this argument merely amounts to a request that we reweigh the evidence, which this Court cannot do.

Because the Commission's findings regarding the skills plaintiff utilized at Wharton Station are supported by competent evidence, they are binding on appeal. These findings, in turn, support the Commission's conclusion that the "management, customer service and other skills he has utilized in the operation of that business, when considered in conjunction with his young age, his educational level, and his work experience (particularly in working with and around motor vehicles), show that he has wage earning capacity in the competitive market, even in light of his ongoing compensable condition in his non-dominant right upper extremity."

Plaintiff next argues, citing *Devlin v. Apple Gold, Inc.*, 153 N.C. App. 442, 570 S.E.2d 257 (2002), that even if there is

evidence to support both prongs of the *Lanning* test, the Commission has not made sufficient findings to determine plaintiff's actual wage-earning capacity in the competitive market. In *Devlin*, the Commission concluded that the plaintiff failed to meet his burden of showing a continuing disability based upon its findings that the plaintiff had wage earning capacity from his gutter cleaning business. *Id.* at 446, 570 S.E.2d at 261. This Court reversed and remanded for further findings of fact because the Commission failed to make findings regarding the second prong of the *Lanning* test and failed to make findings to determine the plaintiff's actual wage-earning capacity. *Id.* at 448, 570 S.E.2d at 262.

Here, in contrast to *Devlin*, the Commission made sufficient findings regarding the second *Lanning* prong. Further, because plaintiff is no longer entitled to partial disability benefits under N.C. Gen. Stat. § 97-30, it is not necessary for the Commission to determine plaintiff's actual wage-earning capacity. A finding that plaintiff has any wage earning capacity is sufficient to preclude plaintiff from compensation under N.C. Gen. Stat. § 97-29, which is only available "[i]f wage-earning power is totally obliterated[.]" *Devlin*, 153 N.C. App. at 447, 570 S.E.2d at 261. Because, in this case, the Commission found that plaintiff retained wage earning capacity,

we hold that the Commission did not err in denying plaintiff total disability benefits.

Finally, plaintiff argues that the Commission erred in denying his Notice of Change of Condition and Motion to Reinstate Compensation, or In the Alternative, Motion for New Evidence. On appeal from a ruling of the deputy commissioner, the Full Commission may reconsider evidence, receive new evidence, and rehear the parties or their representatives if they have good ground to do so. N.C. Gen. Stat. § 97-85(a) (2013). Whether good ground exists to receive additional evidence is within the sound discretion of the Commission. *Lynch v. M. B. Kahn Constr. Co.*, 41 N.C. App. 127, 131, 254 S.E.2d 236, 238 (1979). Accordingly, we review the Commission's denial of plaintiff's motion for abuse of discretion.

In support of his motion, plaintiff argued that the closing of Wharton Station on 30 March 2013 amounted to a change in condition that impacted plaintiff's earning capacity. Plaintiff, however, did not file his motion until 26 August 2013 -- after both parties had submitted their briefs and made oral arguments to the Full Commission. Although the Commission denied plaintiff's motion, it nevertheless ordered that "[a]ny further issues in this claim related to any period after 11 December 2012 may be raised by either side through the filing of

a new Form 33 *Request That Claim Be Assigned For Hearing*." Thus, plaintiff is not precluded from seeking further relief.

Given the timing of the motion and the fact that in order to adequately address the issues raised by plaintiff's motion, both parties will need to submit additional evidence and arguments, it was reasonable for the Commission to wait to address this issue on a record that is more fully developed. We, therefore, hold that the Commission did not abuse its discretion in denying plaintiff's motion.

### Defendant's Appeal

Defendants argue that the Commission erred in awarding medical treatment for plaintiff's right arm complaints and, specifically, for ordering defendants to authorize and pay for plaintiff to undergo a psychiatric evaluation. We disagree.

N.C. Gen. Stat. § 97-25 (2013) requires employers to authorize and pay for medical treatment that is directly related to the claimant's compensable injury. *Parsons*, 126 N.C. App. at 541-42, 485 S.E.2d at 869. Although the plaintiff bears the initial burden of showing that an injury is compensable, once a plaintiff's injury has been proven to be compensable, there is a presumption that additional medical treatment is directly related to the compensable injury, and the burden shifts to defendants "to prove the original finding of compensable injury

is unrelated to [the claimant's] present discomfort." *Id.* at 542, 485 S.E.2d at 869.

"This presumption, sometimes called the *Parsons* presumption, helps to ensure that an employee is not required to reprove causation each time he seeks treatment for an injury already determined to be compensable." *Taylor v. Bridgestone/Firestone*, 157 N.C. App. 453, 458, 579 S.E.2d 413, 416, *reversed on other grounds sub nom. Taylor v. Bridgestone/Firestone*, 357 N.C. 565, 598 S.E.2d 379 (2003). In *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 136, 620 S.E.2d 288, 293 (2005), this Court held that the *Parsons* presumption applies when, as in this case, an employer has filed a Form 60 admitting compensability of the injury.

With respect to the additional medical treatment for plaintiff's injury, the Commission concluded:

> 1. As defendants accepted plaintiff's "electrical shock and injury to right arm" as compensable on a Form 60, plaintiff is entitled to a rebuttable presumption that further medical treatment for his right upper extremity condition is directly related to his original compensable injury. While the medical providers have arrived at the conclusion that a physiological basis for plaintiff's continuing right upper extremity paralysis and numbness cannot be identified through currently available diagnostic testing, they are unable to say what is causing the continuing condition, other than a psychiatric condition. As to whether a possible psychiatric condition is

causally related to the compensable injury, the evidence as a whole does not establish that it is not related. Therefore, based upon the preponderance of the evidence in view of the entire record, defendants have not rebutted the presumption, and plaintiff is thus entitled to further medical compensation for his compensable right arm injury. *Perez v. Am. Airlines/AMR Corp.*, 174 N.C. App. 128, 620 S.E.2d 288 (2005); *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 485 S.E.2d 867 (1997). It is notable that defendants did not file their Form 60 until well after they had ample medical evidence at their disposal that the providers could not identify any physiological cause for plaintiff's continuing right upper extremity paralysis and numbness.

Defendants argue that the Commission applied an incorrect legal standard in reaching its conclusion that defendants failed to rebut the *Parsons* presumption. Defendants, citing Rule 301 of the Rules of Evidence, assert that the presumption places on defendants only a burden of production of "evidence that the medical treatment is not directly related to the compensable injury[,]" *Perez*, 174 N.C. App. at 135, 620 S.E.2d at 292, and does not shift the ultimate burden of proof of causation to defendants. Defendants argue that because they presented "ample medical evidence" that plaintiff's current symptoms are not related to his original compensable injury, they met their burden of production and rebutted the presumption.

We first note that defendants rely solely on the Rules of Evidence in arguing that the presumption only creates a burden

of production and does not shift the burden of proof.  However, this Court has recognized that "[i]n workers' compensation cases . . . the Rules of Evidence do not apply, and the Commission is empowered to make its own rules . . . ."  *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 594, 551 S.E.2d 486, 493 (2001).

This Court in *Parsons* specifically held that the Commission erred "by placing the burden on plaintiff to prove causation" because "[t]o require plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees."  126 N.C. App. at 542, 485 S.E.2d at 869. *See also Gross v. Gene Bennett Co.*, 209 N.C. App. 349, 351, 703 S.E.2d 915, 917 (2011) (holding when *Parsons* presumption applies, "the burden of proof is shifted from the plaintiff to the defendant").  It is not until the defendant "rebuts the *Parsons* presumption [that] the burden of proof shifts back to the plaintiff."  *Miller v. Mission Hosp., Inc.*, ___ N.C. App. ___, ___, 760 S.E.2d 31, 35 (2014).

Furthermore, although "[t]he employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury[,]" *Perez*, 174 N.C.

App. at 135, 620 S.E.2d at 292, presenting such evidence does not automatically rebut the presumption. In *McLeod v. Wal-Mart Stores, Inc.*, 208 N.C. App. 555, 560, 703 S.E.2d 471, 475 (2010), this Court upheld the Commission's conclusion that the defendants failed to rebut the presumption that the plaintiff's back pain was directly related to his compensable back injury despite the defendants having presented expert medical testimony that the plaintiff's back strain from his original injury had resolved and his current pain resulted from other pre-existing conditions that the plaintiff had prior to his injury.

This Court explained:

> Even assuming *arguendo* that [the doctor's] testimony regarding plaintiff's preexisting condition, if found to be credible and given sufficient weight, was enough to rebut the *Parsons* presumption, [t]he [F]ull Commission is the sole judge of the weight and credibility of the evidence. This Court is not at liberty to reweigh the evidence and to set aside the findings simply because other conclusions might have been reached.

*Id.* at 560, 703 S.E.2d at 475 (internal citation and quotation marks omitted). Thus, even where defendants present some medical evidence to support their position, it is the Commission's duty, not ours, to weigh the evidence and determine whether the evidence presented is sufficient to rebut the presumption and shift the burden back to the plaintiff.

In any event, the medical evidence defendants point to as tending to rebut the presumption in this case amounts to an attempt by defendants to relitigate the compensability of plaintiff's original injury. The Commission's findings tend to show that the experts could not identify any physiological explanation for plaintiff's right arm paralysis and numbness following his electric shock injury. Several of the experts did, however, identify a potential psychological etiology for plaintiff's arm condition and recommended that plaintiff undergo a psychiatric evaluation.

Although defendants point to the inability to identify a physiological explanation for plaintiff's arm condition as evidence that his condition was not caused by the 2006 shock injury, defendants ignore the fact that they were well aware of the lack of a physiological explanation for plaintiff's symptoms and the possible psychological explanation by June 2009 when they filed the Form 60 admitting compensability for plaintiff's symptoms. Thus, the Form 60 determined that plaintiff's right arm paralysis was directly related to the 2006 injury regardless whether the etiology of the paralysis was psychological or neurological. It was unnecessary for the Commission to determine "whether a possible psychiatric condition is causally related to the compensable injury" because by admitting

compensability for plaintiff's arm condition knowing that it was possibly caused by a psychological condition, defendants implicitly admitted that any psychiatric condition causing plaintiff's symptoms was also causally related to plaintiff's injury.

Defendants repeat the same contentions in arguing that the Commission erred in ordering defendants to provide a psychiatric evaluation because "there has been no prior decision as to the existence or compensability of a mental condition[.]" Defendants reason that because the *Parsons* presumption is narrow and limited to the "very injury" previously determined to be compensable, *Parsons*, 126 N.C. App. at 542, 485 S.E.2d at 869, the presumption does not apply with respect to a psychiatric evaluation, and plaintiff bears the burden of showing "by the preponderance of the evidence that he suffers from such a mental condition that resulted directly and proximately from the 2006 electrical shock injury."

However, as explained in *Perez*, "[t]he presumption of compensability applies to future *symptoms* allegedly related to the original compensable injury." 174 N.C. App. at 137 n.1, 620 S.E.2d at 293 n.1 (emphasis added). Defendants have not cited any authority that the presumption does not apply if the *cause* of a symptom, already determined to be directly related to a

compensable injury, is psychological rather than physiological. Plaintiff's symptoms -- paralysis and numbness of his right arm -- have not materially changed since defendants filed their Form 60. Here, the Commission ordered a psychiatric evaluation as medical treatment addressing plaintiff's arm paralysis, not as treatment for a separate mental condition.

This result is not inconsistent with *Clark v. Sanger Clinic, P.A.*, 175 N.C. App. 76, 623 S.E.2d 293 (2005), cited by defendants. There, the plaintiff suffered an admittedly compensable injury to her back, and the Commission ordered defendants to provide all medical treatment arising from her injury, "including subsequent falls resulting from her back injury causing dental problems and a knee injury." *Id.* at 78, 623 S.E.2d at 295. Two years later, the plaintiff requested medical compensation for degenerative arthritis in her knees. This Court concluded that the Commission properly declined to apply the *Parsons* presumption to medical treatment for the arthritis and held that plaintiff's degenerative arthritis was not compensable. *Id.* at 79, 623 S.E.2d at 296. This Court explained that, unlike in *Parsons*, where "the plaintiff was suffering from the exact same complaint (headaches) for which she was initially awarded medical expenses and future medical treatment[,]" in *Clark*, the "plaintiff [was] suffering from

degenerative arthritis, while at the time of the initial award plaintiff suffered a compensable knee injury caused by falls related to her compensable injury by accident." *Id.*

Finally, defendants contend that the Commission erred in refusing to award a credit to defendants for compensation payments made after the filing of the Form 24 application to terminate compensation. When an employer files a Form 24 application to terminate compensation, "the employee's compensation shall continue pending a decision by the Commission[.]" N.C. Gen. Stat. § 97-18.1(d) (2013). Rule 404(8) of the Workers' Compensation Rules of the North Carolina Industrial Commission provides that after a full hearing, the Commission may award retroactive termination of compensation and that an employer may seek a credit pursuant to N.C. Gen. Stat. § 97-42 (2013). The decision whether to grant a credit is within the sound discretion of the Commission and will not be reversed on appeal absent abuse of discretion. *Cross v. Falk Integrated Techs., Inc.*, 190 N.C. App. 274, 286, 661 S.E.2d 249, 257 (2008).

In this case, the Commission denied defendants' request for a credit based upon the following:

> 5. In the Pre-Trial Agreement, defendants listed as an issue "Whether [d]efendants are owed a credit for overpayment of TTD to plaintiff after his

disability ended?" However, defendants made no argument for any such credit in their Contentions or proposed Opinion and Award to the Deputy Commissioner, and this issue was thus deemed abandoned and was not ruled upon by the Deputy Commissioner. Based on defendants' failure to argue for any such credit in their Contentions or proposed Opinion and Award to the Deputy Commissioner, the Commission, in its discretion, declines to grant defendants a credit for any overpayment of TTD to plaintiff. N.C. Gen. Stat. § 97-42.

On appeal, defendants make no argument that the Commission erred in deeming their request for a credit abandoned, nor do they make any argument that denial of a credit for this reason amounted to an abuse of discretion. We, therefore, affirm.

Affirmed.

Judge STEELMAN concurs.

Judge ROBERT N. HUNTER, JR. concurred in this opinion prior to 6 September 2014.

Report per Rule 30(e).